Mary A. HARRIS, Appellant,

v.

Joyce A. LADNER, et al., Appellees.

No. 96–7120.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 9, 1997.

Decided Oct. 31, 1997.

Clifford A. Brooks, Dyke, VA, argued the cause, for appellant.

David G. Leitch, Washington, DC, argued the cause, for appellees. Janet Pitterle Holt, Washington, DC, was on brief.

Before: EDWARDS, Chief Judge, HENDERSON and GARLAND, Circuit Judges.

Opinion for the court filed by Circuit Judge KAREN LeCRAFT HENDERSON.

KAREN LeCRAFT HENDERSON, Circuit Judge:

The appellant, Mary A. Harris, appeals the district court's dismissal of her complaint alleging that Howard University (University) and various University officials engaged in unlawful acts in denying her tenure and promotion to the rank of associate professor of Spanish at the University. The district court dismissed her action, concluding that the applicable statute of limitations barred the bulk of her claims. The court determined the statute of limitations commenced on October 31, 1991, the date the University first informed her by letter that tenure and promotion had not been approved. Harris argues, *inter alia*, that the letter does not constitute a final "tenure decision" under *Delaware State College v. Ricks*, 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980) (statute of limitations commences "at the time the tenure decision was made and communicated to" candidate), because, according to University regulations, she was entitled to—and ultimately received—reconsideration of the tenure committee's negative recommendation before receiving a *final* letter of denial from the University. We reverse the district court's dismissal based on the statute of limitations. The appellant does not contest, however, and we therefore affirm, the dismissal of her constitutional claims.

I.

Mary Harris is a black female of Guyanese descent. In August 1985 the University hired her as an assistant professor of Span-

ish on a probationary appointment.[1] In October 1989 Harris applied for tenure and promotion to associate professor.[2] The Appointments, Promotions, and Tenure Committee of the Department of Romance Languages (Department APT Committee) denied Harris's application. She alleges that she was informed that she should publish additional material (either five articles or one book) and reapply in one year.

After completing a book on poetry which was accepted for publication, Harris reapplied for tenure and promotion in October 1990. This time the Department APT Committee and the department chairman recommended Harris for promotion and tenure. Her application was then forwarded to the APT Committee of the College of Arts and Sciences (College APT Committee) which recommended against promotion and tenure. Her application was next reviewed by the Acting Dean of the College, Clarence Lee, who "endorse[d] her promotion with tenure ... but with great reservation." Joint Appendix (JA) 234. Joyce A. Ladner, the University's Vice President of Academic Affairs, recommended against promotion and tenure. By letter dated October 31, 1991 Harris was informed by Dean Lee that:

> [T]he President of the University, Dr. Franklyn G. Jenifer, has not approved the recommendation that you be promoted to the rank of Associate Professor with tenure.
>
> On behalf of the College of Arts and Sciences, I wish to thank you for your service and wish you well in your future endeavors.

JA 151.

After receiving the letter, Harris sought the assistance of James Davis, Acting Chair-

man of the Department of Romance Languages. According to Harris's amended complaint, Davis informed her that she had "the right to reconsideration." JA 26. Davis instructed her to write a letter to Dean Lee and include two letters of recommendation from outside the University to commence the reconsideration process. Harris then consulted with Dean Lee. According to Harris, "[b]oth Dr. Davis and Dr. Lee affirmatively advised [her] that said reconsideration was the next step in the tenure application process." *Id.* In addition, by letter dated January 9, 1992 Ladner "confirmed that plaintiff's application for tenure would be 're-evaluate[d]' pursuant to 'the guidelines established for petitions of reconsideration,' and that [Ladner] would inform Dr. Lee, of President Jenifer's 'decision' " once Harris initiated the reconsideration process. *Id.*

Harris subsequently resubmitted her application with two letters of recommendation and a copy of her book on poetry, which had by then been published. By letter dated March 25, 1992 she was notified by Dean Lee that:

> [Y]our petition to have your application for promotion and tenure reconsidered has been reviewed thoroughly by the College and the Central Administration. All pertinent supporting documents and relevant factors in your case were carefully evaluated. It is however, my unpleasant task to inform you that no basis was found upon which to change the original recommendation, namely that promotion and tenure be denied to you.

JA 159.

On March 24, 1995 Harris filed a complaint against the University and various Universi-

---

1. Harris's probationary status meant that tenure was not guaranteed. The *Howard University Faculty Handbook (Handbook)* explains that "[t]enure shall not be granted by default, through the mere serving of the full limit of time (seven years) by a faculty member under probationary appointment." Joint Appendix (JA) 130.

2. The *Handbook* includes a section entitled, "Precise Policies And Procedure Of The Tenure Process," which details the following levels of review for a tenure application: the departmental Appointments, Promotions, and Tenure (APT) Committee, the department chairman, the College of

Arts and Sciences APT Committee, the Dean of the College of Arts and Sciences, the Vice-President for Academic Affairs, the President and the Board of Trustees. JA 130–32. *See also* Howard University's *Guidelines for Appointments, Promotions, and Tenure Committee (Guidelines)*, JA 133–38 (The *Handbook* and the *Guidelines* are separate publications. The former was adopted by the Board of Trustees in June 1980, while the latter was published by the Office of the Vice President for Academic Affairs in 1986.). According to the *Handbook*, "[t]he decision of the Board shall be final." JA at 132.

ty officials.[3] Her complaint, alleging that she was wrongfully denied tenure and promotion, pressed five claims: (1) race discrimination in violation of 42 U.S.C. § 1981; (2) equal protection and due process violations under the fifth and the fourteenth amendments; (3) breach of contract; (4) tortious violation of a common law right of "fair procedure"; and (5) tortious interference with contract. Relying on *Delaware State College v. Ricks*, 449 U.S. 250, 258, 261, 101 S.Ct. 498, 505, 66 L.Ed.2d 431 (1980) (statute of limitations commences "at the time the tenure decision was made and communicated to" candidate and "pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods"), the district court concluded that the October 31, 1991 letter to Harris "was final and unequivocal" and therefore triggered the three-year statute of limitations applicable to Harris's claims. *Harris v. Ladner*, No. 95–1111, mem. op. at 5 (D.D.C. Oct. 3, 1995). The district court considered Harris's "resubmission of her application" after October 31, 1991 as "a form of collateral review of the initial decision" which did "not in any way alter the finality of the first decision." *Id.* Because her complaint was filed after October 31, 1994, the district court found her claims time-barred. In addition, the district court found Harris's constitutional claims deficient because she failed to allege sufficient governmental involvement in the tenure process to invoke the protections of the fifth and the fourteenth amendments. Consequently, the district court granted the University's motion to dismiss.[4]

## II.

Our review of the district court's grant of a motion to dismiss is *de novo*. *See Wilson v. Pena*, 79 F.3d 154, 160 n. 1 (D.C.Cir.1996).

To determine whether the district court appropriately dismissed Harris's action for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, we must accept her factual allegations as true, *see Albright v. Oliver*, 510 U.S. 266, 268, 114 S.Ct. 807, 810, 127 L.Ed.2d 114 (1994), and draw all inferences in her favor. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). To prevail on a motion to dismiss for failure to state a claim under Rule 12(b)(6), the defendants must show "beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

■ The appellees argue that this appeal can be resolved through a routine application of the Supreme Court's holding in *Ricks*. Plaintiff Ricks joined the education department faculty at Delaware State College in 1970. In February 1973 the appropriate faculty committee recommended against tenure but agreed to reconsider its decision the following year. In February 1974, on reconsideration, the committee "adhered to its earlier recommendation." 449 U.S. at 252, 101 S.Ct. at 501. The following month the faculty senate voted to support the tenure committee's recommendation and on March 13, 1974 the board of trustees (Board) formally voted to deny Ricks tenure. Ricks subsequently filed a grievance. During the pendency of the grievance, the Board formally notified Ricks, by letter dated June 26, 1974, that it "officially endorsed" the recommendation of the faculty senate not to grant him tenure and offered him a one-year "terminal" contract expiring on June 30, 1975. *Id.* at 253 n. 2, 101 S.Ct. at 501 n. 2. Ricks signed the contract on September 4, 1974. On Sep-

---

3. The officials include Joyce A. Ladner, Interim President, Franklyn G. Jenifer, Past President, Moraima Donahue, a member of the "Tenure Committees" and "John Doe (unknown person[s] ), individually and as officials, employees, agents, assistants and/or persons acting in concert or cooperation with the other named defendant[s] or under their supervision." JA 1.

4. On October 30, 1995 Harris filed a "Motion for Reconsideration, to Set Aside Order of Dismissal,

and for Leave to Amend Complaint" alleging that she had discovered new facts supporting an amended complaint. The district court eventually denied her motion because, *inter alia*, the new evidence on which her motion relied was available to her "at least two months prior to the judgment." *Harris v. Ladner*, No. 95–1111, at 6 (D.D.C. May 23, 1996) (order denying plaintiff's motion for reconsideration). The Court also held that her new claims, like her original ones, were time-barred. *Id.*

tember 12, 1974 the Board notified Ricks that it had denied his grievance.

Ricks filed suit on September 9, 1977, alleging that Delaware State College unlawfully denied him tenure based on his national origin (Liberian) in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. *Id.* at 254, 101 S.Ct. at 501. The district court determined that his claims accrued on June 26, 1974, the date he was notified by the Board that tenure had been denied, and therefore his claims were untimely filed. The Third Circuit reversed, holding that the applicable three-year statute of limitations began on the date Ricks's terminal contract expired. The Supreme Court reversed the Third Circuit, concluding that the statute of limitations commenced "at the time the tenure decision was made and communicated to" Ricks. *Id.* at 258, 101 S.Ct. at 504. The district court was justified, the Supreme Court said, in concluding that the decision was communicated "no later than" the date of the June 26, 1974 letter, notwithstanding Ricks's grievance remained pending until September. *Id.* at 262, 101 S.Ct. at 506. Relying on its earlier decision in *Electrical Workers v. Robbins & Myers, Inc.*, 429 U.S. 229, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976), the Court noted "we already have held that the pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods" and that the "existence of careful procedures to assure fairness in the tenure decision should not obscure the principle that limitations periods normally commence when the employer's decision is made." *Id.* at 261, 101 S.Ct. at 505.

We believe Harris's case is distinguishable from *Ricks*. Harris maintains that originally she was not apprised of her right to reconsideration under Section E of the University's *Guidelines for Appointments, Promotions, and Tenure Committees*

(*Guidelines*).[5] Consequently, Harris claims that she was not given a meaningful opportunity to seek reconsideration from the College APT Committee, as was her "right" pursuant to the *Guidelines*, before the negative recommendation was forwarded directly to University officials for further action. Moreover, Harris might reasonably have believed that the reconsideration her application ultimately received was given in accordance with the *Guidelines*. She alleged that both the department chairman and the College Dean "affirmatively advised [her] that said reconsideration was the next step in the tenure application process." JA 26. Indeed, defendant Ladner, the University Vice President, revealed in a January 9, 1992 letter to Ian Isidore Smart, a University faculty member who strongly supported Harris's tenure application, that Harris planned to file a "petition for reconsideration" and had been "encouraged ... to follow the guidelines established for petitions of reconsideration." JA 158. As the appellees conceded during oral argument, however, those procedures provide for reconsideration *before* the final decision. As a result, it may have been reasonable for Harris to believe that the University was reconsidering her application pursuant to the *Guidelines* and that the tenure decision thus was not yet final. Her belief could have been bolstered by the fact that the University has a specific "grievance" procedure, wholly distinct from the reconsideration process, which is available to an unsuccessful candidate only *after* the University's final adverse action. *Howard University Manual: Faculty Handbook Section*, JA 116–17. The reconsideration Harris received was, according to the University's own process, not part of its grievance procedure. As a result, the reconsideration might well not have been "a grievance, or some other method of collateral review of an employment decision"

---

**5.** Section E reads:

    **E. Faculty's Right to Petition for Reconsideration**

    When a decision not to recommend promotion or tenure for a faculty member is rendered by the departmental or school- or college-wide APT Committee, *the faculty member has the right to petition the APT Committee for reconsideration* of its decision *if* he or *she can provide materials that were not available during*

*the initial review.* The APT Committee has the obligation to determine whether the new materials warrant reconsideration of its decision. The faculty member should be notified promptly of this decision. Petitions should be submitted through department chairmen for departmental Committees and through the deans for school- or college-wide Committees.

JA 137–38 (emphases added).

that "does not toll the running of the limitations periods." *Ricks*, 449 U.S. at 261, 101 S.Ct. at 505. Rather, the reconsideration may have been a continuation of the original application process.

We note that our holding is not intended to allow a plaintiff to avoid the holding in *Ricks* simply by labeling the final decision "preliminary" and procedures to review that decision an "integral part" of the decision process rather than collateral review of the final decision. Our disposition of this case does not disturb or undercut the holding in *Ricks* that the "existence of careful procedures to assure fairness in the tenure decision should not obscure the principle that limitations periods normally commence when the employer's decision is made." *Id.* Rather, our holding is restricted to Harris's allegations regarding the reconsideration process afforded her, which process, although termed "reconsideration," does not appear to be like the collateral review procedure at issue in *Ricks*. Rather, under the University's procedures as set forth in its *Guidelines* and conceded at oral argument, the reconsideration provided Harris appears to occur only prior to the final tenure decision.

Because the defendants did not show below "beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief," *Conley*, 355 U.S. at 45–46, 78 S.Ct. at 101–102 we conclude that Harris sufficiently set forth a claim upon which relief could be granted and dismissal under Rule 12(b)(6) was therefore improper. We leave open to the district court the possibility of disposing of this case as a matter of law after discovery. We simply hold that the district court erred in dismissing Harris's amended complaint on the statute of limitations ground at this stage of the litigation.

## III.

As Harris does not appear to contest the dismissal of her fifth and fourteenth amendment claims, we need not tarry over them.[6] While "[t]here is no doubt that How-

ard [University]'s action has serious consequences for appellant ... it is not subject to all the constraints put on governmental action by the due process clause." *Williams v. Howard Univ.*, 528 F.2d 658, 660 (D.C.Cir. 1976). Indeed, because Howard University is a private institution, the plaintiff must show more than "general governmental involvement" in the University's affairs before constitutional protections are implicated. *See, e.g., Sanford v. Howard Univ.*, 415 F.Supp. 23, 29 (D.D.C.1976) ("A showing of general involvement in a private educational institution is not enough to convert essentially private activity into governmental activity for purposes of a due process claim, and Howard [University]'s essentially private status must be recognized."), *aff'd*, 549 F.2d 830 (D.C.Cir.1977). The district court correctly dismissed the constitutional claims on the ground that Harris "failed to show the necessary level of governmental involvement in the tenure decision-making process to allow the court to find that Howard University, a private institution, should be held to the constraints of the Fifth and Fourteenth Amendments." *Harris*, No. 95–1111, at 8 (internal footnote omitted).

\* \* \*

For the foregoing reasons we reverse the district court's dismissal of Harris's non-constitutional claims, affirm its dismissal of her constitutional claims and remand for further proceedings consistent with this opinion.

*So ordered.*

---

**6.** *See* Appellee's Br. at 7 n.2; Appellant's Br. at 1–3.