**Johnny Ray CHANDLER, Appellant,**

v.

**DISTRICT OF COLUMBIA DEPARTMENT OF CORRECTIONS, et al., Appellees.**

No. 96–5166.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 15, 1998.

Decided June 12, 1998.

Robert D. Wick, appointed by the court, argued the cause as amicus curiae on behalf of appellant, with whom Alan A. Pemberton was on the briefs.

Johnny Ray Chandler, appearing pro se, was on the brief.

Andrew J. Morris, with whom Jo Anne Robinson, Interim Corporation Counsel, Charles L. Reischel, Deputy Corporation Counsel, Lutz Alexander Prager, Assistant Deputy Corporation Counsel, and Lawrence S. Robbins were on the brief, for appellees. Mary L. Wilson, Assistant Corporation Counsel, entered an appearance for appellees.

Before GINSBURG and TATEL, Circuit Judges, and BUCKLEY, Senior Circuit Judge.

BUCKLEY, Senior Judge:

In this case we decide two issues: first, whether section 804(d) of the Prison Litigation Reform Act of 1995 applies to appeals pending on the date that the Act took effect; and second, whether an inmate states a claim upon which relief may be granted when he alleges that a District of Columbia Department of Corrections officer threatened to have him killed and that Department of Corrections officials failed to respond to his complaints concerning the threat.

## I. BACKGROUND

### A. Statutory Scheme

Section 804 of the Prison Litigation Reform Act of 1995 ("PLRA" or "Act"), Title VIII of the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub.L. No. 104–134, § 804, 110 Stat. 1321–66, 1321–73 (1996), amended 28 U.S.C. § 1915 (1994), which authorized courts to waive the payment of initial filing fees and to permit a plaintiff to proceed *in forma pauperis* ("IFP") upon submission of an "affidavit that he [was] unable to pay such costs or give security therefor." 28 U.S.C. § 1915(a) (1994). Once permitted by a district court to proceed in that status, the plaintiff was entitled to take an appeal IFP so long as the district court did not "certif[y] in writing that [the appeal] [wa]s not taken in good faith." *Id.* Because Congress had concluded that prisoner litigants were abusing the statute by flooding the courts with meritless claims, *see Tucker v. Branker,* 142 F.3d 1294, 1296 (D.C.Cir.1998), section 804 established new standards for the grant of IFP status to prisoners, as opposed to other litigants. The PLRA was signed into law on April 26, 1996.

As amended by section 804, section 1915 now provides that a prisoner who wishes to initiate a court proceeding must assume liability for the entire cost of the filing fee unless its imposition would "prohibit[ ] [him] from bringing a civil action or appealing a

... judgment." 28 U.S.C. § 1915(b)(1), (4) (Supp.1997). A prisoner seeking to proceed IFP must submit a statement of all his assets as well as a certified copy of his prison trust fund account for the six-month period immediately preceding the filing of his complaint or notice of appeal. *Id.* § 1915(a)(1), (2). If he qualifies for IFP, the prisoner will ·be required to pay an "initial partial filing fee" that is computed on the basis of the information in his prisoner's account. *Id.* § 1915(b)(1). The prisoner is then required to pay the balance in monthly installments. *Id.* § 1915(b)(2), (b)(3). If, however, a prisoner has filed, while incarcerated, three or more cases that have been dismissed for being frivolous or malicious or for failing to state a claim upon which relief could .be granted, he may not proceed IFP, *id.* § 1915(g), and must therefore pay the entire fee on filing. An indigent prisoner otherwise subject to subsection (g) may nevertheless proceed IFP when he is "under imminent danger of serious physical injury." *Id.*

## B. Factual and Procedural History

In August 1995, appellant Johnny Ray Chandler, a District of Columbia prisoner held at the Occoquan Correctional Facility in Lorton, Virginia ("Lorton"), filed a *pro se* complaint alleging that Lorton officials had violated a number of his constitutional rights. He sought both prospective injunctive relief and monetary damages. *See* 42 U.S.C. § 1983. Coincident with filing his complaint, Chandler also moved to proceed IFP. As liberally construed by the district court, his complaint alleged that Corporal Brenda Brooks, a D.C. correctional officer stationed at Lorton, violated his Eighth Amendment rights by threatening to have him killed and that the Department of Corrections ("Department") violated both the Eighth Amendment and his Fifth Amendment due process rights when it ignored his administrative complaints. The district court granted Chandler's motion to proceed IFP and later dismissed his complaint for failure to state a claim. *See* Fed.R.Civ.P. 12(b)(6).

Chandler timely filed his notice of appeal on April 22, 1996. Although the notice is broad enough to reach the district court's dismissal of both his Fifth Amendment and Eighth Amendment claims, we will only address the latter because Chandler's appellate brief fails to mention his due process claim, which is therefore forfeited. *See Terry v. Reno,* 101 F.3d 1412, 1415 (D.C.Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 2431, 138 L.Ed.2d 193 (1997) ("We ... address only the arguments appellant[ ] h[as] briefed").

On June 14, 1996, the Department filed a motion requesting that we either summarily affirm the district ·court judgment on the ground ·that Chandler had failed to pay his docketing fee in violation of subsection (g) or order him to pay the fee. We denied the motion for summary affirmance and consolidated consideration of the Department's alternative request with the hearing on the merits of Chandler's appeal. We also appointed an *amicus curiae* to present arguments on Chandler's behalf.

## II. ANALYSIS

**A. Applicability of Section 1915(g) to Appeals Pending at the Time of the PLRA's Effective Date**

 Congress did not specify the date on which the PLRA would take effect. The Supreme Court long ago noted that, absent a statutory instruction to the contrary, a bill becomes law when signed by the President or, in the event he fails to sign it, ten days following its passage by both houses of Congress. *See Louisville v. Portsmouth Savings Bank,* 104 U.S. (14 Otto) 469, 476–79, 26 L.Ed. 775 (1881); *see also* U.S. Const. art. I, § 7, cl. 2. President Clinton signed the PLRA on April 26, 1996; accordingly, it took effect on that date, which was four days after Chandler had filed his appeal. We must now determine whether subsection (g), which was added to section 1915 by the PLRA, applies to appeals filed before April 26.

As we explained above, section 1915 generally concerns the procedures by which a plaintiff may proceed IFP. Subsection (g) states:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section [i.e.,

IFP] if the prisoner has, on 3 or more occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g) (Supp.1997).

If we assume for purposes of analysis that (as the Department maintains) Chandler, while imprisoned, has had at least three prior claims dismissed for one of the reasons cited in subsection (g), whether he is thereby prohibited from proceeding IFP will depend on whether the phrase "appeal a judgment" means "file an appeal," as advocated by Chandler, or "prosecute an appeal," as proposed by the Department. If the Department is correct, subsection (g) applies to all appeals pending on April 26, 1996, and Chandler is foreclosed from proceeding with his appeal without paying the applicable fee. The circuits that have considered this question are in conflict. *Compare Adepegba v. Hammons*, 103 F.3d 383, 386–87 (5th Cir. 1996) (holding that application of section 1915(g) to appeals filed prior to April 26 is not impermissibly retroactive) *with Canell v. Lightner*, 143 F.3d 1210, 1212–13, (9th Cir. 1998); *Abdul–Wadood v. Nathan*, 91 F.3d 1023, 1025 (7th Cir.1996) ("Section 1915(g) governs bringing new actions or filing new appeals ... rather than the disposition of existing cases."); *White v. Gregory*, 87 F.3d 429, 430 (10th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 528, 136 L.Ed.2d 415 (1996); *see also Garcia v. Silbert*, 141 F.3d 1415, 1416 (10th Cir.1998) (holding that section 1915(g) does not apply to suit pending before district court when the PLRA took effect).

We hold that because subsection (g) is applied at the time that a prisoner files his appeal rather than throughout the course of the proceeding, it is inapplicable to Chandler. The parties' lengthy discussion of retroactivity is therefore irrelevant. While the phrase "appeal a judgment" may appear ambiguous when examined in isolation, we must read those words in the context of the rest of section 1915 (all of which deals with proceedings IFP) in order to determine their statutory meaning. *See Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307, 81 S.Ct. 1579, 6 L.Ed.2d 859 (1961) ("The maxim *noscitur a sociis*, that a word is known by the company it keeps, while not an inescapable rule, is often wisely applied where a word is capable of many meanings in order to avoid the giving of unintended breadth to the Acts of Congress."). Read in concert with the rest of section 1915, "appeal a judgment" in subsection (g) plainly refers to the initiation of an appeal. The Department's contrary reading suffers two fatal shortcomings: first, it would be at odds with the meaning of the phrase as it is used elsewhere in section 1915; and second, it would cause subsection (g) to operate in different ways depending on whether the prisoner was filing a complaint or an appeal.

*First*, subsection 1915(g) states that a prisoner may not "bring a civil action or appeal a judgment" IFP if, while imprisoned, he has had three cases dismissed for certain enumerated reasons. 28 U.S.C. § 1915(g). Two other subsections use the same "bring a civil action or appeal a judgment" formulation, *see id.* § 1915(a)(2), (b)(4), while a third applies to prisoners who "bring[ ] a civil action or *file* [ ] an appeal." *Id.* § 1915(b)(1) (emphasis added). The Department seizes on the distinction between the references to an appeal in subsections (b)(1) and (g) to argue that Congress intended the phrase "appeal a judgment" to refer to something other than the filing of an appeal. While superficially seductive, this argument does not carry its weight.

Subsection (b)(1) provides that "if a prisoner *brings* a civil action or *files* an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee." *Id.* (emphasis added.) As the Seventh Circuit noted in *Thurman v. Gramley*, 97 F.3d 185, 187 (7th Cir.1996), the italicized words identify the dispositive events that trigger the obligation to pay the filing fee. We now compare that subsection with subsection (a)(2), which states that "[a] prisoner *seeking to bring* a civil action or *appeal* a judgment

[IFP] ... shall submit a certified copy of [his prison] trust fund account statement...." *Id.* § 1915(a)(2) (emphasis added). Again, the italicized words define the dispositive events that give rise to an obligation. It should be self-evident that "appeal a judgment" in this subsection is equivalent to "file an appeal" because the reason a prisoner seeking to proceed IFP must submit this financial information is to enable a court to determine the minimum initial payment he will be required to make in order to initiate his appeal. *See id.* § 1915(b)(1). If there were any doubt as to the matter, it is put to rest by the requirement in the balance of subsection (a)(2) that the certified statement be "for the 6–month period immediately preceding the filing of the complaint or *notice of appeal* ...." *Id.* (emphasis added.)

The same conclusion is required by a careful reading of subsection (b)(4), which provides:

> In no event shall a prisoner be prohibited from bringing a civil action or appealing a civil or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee.

*Id.* § 1915(b)(4). Because an appellant is required to pay the filing fee "[u]pon the filing of a[] ... notice of appeal," Fed. R.App. P. 3(e), it should be obvious that "appealing a ... judgment," in subsection (b)(4), refers to the initiation of an appeal. This same conclusion is compelled by the interplay between subsections (b)(1) and (b)(4) because the latter serves to override the former's requirement that a prisoner pay at least a portion of the fee at the time of filing.

In the absence of any provision of the statute mandating such a contradiction, to read the phrase "appeal a judgment" in subsection (g) to mean something other than what it means in subsections (a)(2) and (b)(4) is nonsensical. As the Supreme Court has observed, "there is a natural presumption that identical words used in different parts of the same act are intended to have the same meaning." *Atlantic Cleaners & Dyers, Inc. v. United States,* 286 U.S. 427, 433, 52 S.Ct. 607, 76 L.Ed. 1204 (1932).

*Second,* subsection (g) states that a prisoner may not "bring a civil action or appeal a judgment" IFP when he has had three cases dismissed for any of the enumerated reasons. 28 U.S.C. § 1915(g). As Amicus argues, and the Department does not contest, the phrase "bring a civil action" means to initiate a suit. *Cf. Heckler v. Chaney,* 470 U.S. 821, 833, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985) (using the phrases "bring" a suit and "file" a suit interchangeably); *Dunlop v. Bachowski,* 421 U.S. 560, 575 n. 11, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975) (same). In the prosecution of a civil action, therefore, subsection (g) plainly applies only at the time an indigent prisoner files his complaint with the district court. The Department's reading of the phrase "appeal a judgment," however, would require continuous application of subsection (g) throughout the prosecution of an appeal. Section 1915 does not otherwise distinguish between trials and appeals, and the Department offers no reason why Congress would have wanted to treat them differently in this instance. Because we can think of none, we conclude that Congress did not intend so strange a result.

In light of the above, we hold that the phrase "appeal a judgment" in subsection (g) refers to the initiation of an appeal. Because Chandler filed his appeal prior to the effective date of the PLRA, he retains the IFP status he secured before the district court and may so proceed before us. *See* Fed. R.App. P. 24(a). We now consider the merits of his appeal.

B. Adequacy of Chandler's Pleading that his Eighth Amendment Rights Were Violated

Chandler alleged in his complaint that Corporal Brooks "made a threat against [his] life." Chandler Compl. at 3. In papers submitted in his opposition to the Department's motion for dismissal, Chandler elaborated that Corporal Brooks's threat had caused him "psychological damage" and that his fear that it would be carried out caused him to have "[n]ightmares and [to] wak[e] up in a frantic sweat." Furthermore, Chandler claimed that the failure of Lorton officials to transfer him to another facility, or otherwise

to respond to his administrative complaints, left him vulnerable to attack and created an ongoing risk of injury. *See* Chandler Compl. at 4. At this stage of the proceedings, we must "accept [Chandler's] factual allegations as true and draw all inferences in [his] favor." *Harris v. Ladner,* 127 F.3d 1121, 1123 (D.C.Cir.1997) (citations omitted).

▪ The Eighth Amendment bars the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. The Supreme Court has recognized two categories of prisoner cases as actionable under the amendment: complaints regarding prisoners' conditions of confinement, *see, e.g., Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (holding that allegations of deliberate failure to provide adequate medical care state a claim under the Eighth Amendment), and those alleging excessive use of force, *see, e.g., Whitley v. Albers,* 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (reviewing amount of force that prison guards may use to put down riot). *See also Farmer v. Brennan,* 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (" 'application of the deliberate indifference standard is inappropriate' . . . when 'officials stand accused of using excessive physical force.' " (citations omitted)). To prevail in a case alleging unconstitutional conditions of confinement, a prisoner must show that the government official "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety," *id.* at 837, 114 S.Ct. 1970 (1994); to state a claim of excessive use of force, the prisoner must prove that a government official acted " 'maliciously and sadistically for the very purpose of causing harm,' " *see Whitley,* 475 U.S. at 320–21, 106 S.Ct. 1078, and that the consequent injury was more than *de minimis, see Hudson v. McMillian,* 503 U.S. 1, 9–10, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). *See generally Babcock v. White,* 102 F.3d 267, 273 (7th Cir.1996) (discussing the differing standards of proof applicable to these two causes of action). Chandler has pled both deliberate indifference and excessive force. *See* Chandler Compl. at 3.

The district court's memorandum opinion does not reveal whether the court read Chandler's complaint to allege excessive force, deliberate indifference, or both. In articulating the applicable legal standard, however, the court referred only to cases concerning a prisoner's conditions of confinement. *See* Mem. Op. at 7 (citing *Farmer,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811, and *Wilson v. Seiter,* 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)). The court stated that "[a] verbal threat is not 'sufficiently serious' to qualify as cruel and unusual punishment" and then held that Chandler's complaint failed to state a claim because "one isolated threat is not 'sufficiently serious' " to implicate Eighth Amendment rights. Mem. Op. at 7. Because the court found Chandler's failure to plead sufficient injury dispositive, it did not consider whether, as alleged, the prison officials had been culpable of threatening Chandler or failing to address his complaints concerning those threats.

▪ We exercise *de novo* review over the district court's dismissal of Chandler's claim. *See Harris v. Ladner,* 127 F.3d 1121, 1123 (D.C.Cir.1997). Dismissal for failure to state a claim is appropriate only if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote omitted).

▪ We note at the outset that verbal threats, without more, may be sufficient to state a cause of action under the Eighth Amendment. *See Hudson,* 503 U.S. at 16, 112 S.Ct. 995 (Blackmun, J., concurring). As Justice Blackmun observed,

[i]t is not hard to imagine inflictions of psychological harm—without corresponding physical harm—that might prove to be cruel and unusual punishment. . . . [T]he Eighth Amendment prohibits the unnecessary and wanton infliction of "pain," rather than "injury." . . . "Pain" in its ordinary meaning surely includes a notion of psychological harm.

*Id.* Although a verbal threat standing alone is generally inadequate to state a constitutional claim, *see Hopson v. Fredericksen,* 961 F.2d 1374, 1378 (8th Cir.1992), such a threat could violate the Eighth Amendment if the resulting harm were sufficiently severe, *see*

*Freitas v. Ault,* 109 F.3d 1335, 1338 (8th Cir.1997) (recognizing that prisoner could bring section 1983 action for physical and psychological harm resulting from sexual harassment).

Chandler's allegation does not fall into any of the categories of verbal threat that courts have heretofore recognized as potentially violative of the Eighth Amendment—namely, the repeated threat of physical harm, *see Doe v. Welborn,* 110 F.3d 520, 524 (7th Cir.1997) (stating that prisoner did not show "the kind of extreme and officially sanctioned psychological harm that might support a claim for damages under the Eighth Amendment"), sexual harassment, *see Freitas,* 109 F.3d at 1338, or a threat accompanied by conduct supporting the credibility of the threat, *see, e.g., Northington v. Jackson,* 973 F.2d 1518, 1522 (10th Cir.1992) (describing how parole officer held gun to prisoner's head while threatening to kill him). This case therefore raises an issue of first impression: Do a prisoner's allegations that a guard threatened to have him killed and that prison officials ignored his consequent administrative complaints state claims upon which relief could be granted?

Though novel, the facts underlying Chandler's complaint are similar to those that confronted the Fourth Circuit in *Hudspeth v. Figgins,* 584 F.2d 1345 (4th Cir.1978). In that case, the court reversed the district court's dismissal of a prisoner's section 1983 suit alleging that a guard had threatened to have him killed because he had a suit pending against the prison. The Fourth Circuit held that the combination of the guard's threat and the prisoner's subsequent transfer from unsupervised work to a work detail supervised by armed guards sufficed to state a cause of action under section 1983. *See id.* at 1348. In *dicta,* the court noted that if the guards "intentionally plac[ed] Hudspeth in fear for his life if he pressed his court actions[,] that would inflict such suffering as to amount to unconstitutional punishment." *Id.*

Unlike the district court, we are not persuaded that the injuries described in Chandler's complaint were necessarily insufficient to state a claim under the Eighth Amendment. If we credit his allegations, Corporal Brooks's threat put Chandler in imminent fear of his life because she was in a position to carry it out. Depending on the gravity of the fear, the credibility of the threat, and on Chandler's psychological condition, the threat itself could have caused more than *de minimis* harm and therefore could have been sufficient to state a claim of excessive use of force. These issues cannot be resolved without more factual development. Furthermore, the risk that Corporal Brooks's threat might be carried out, if left unaddressed (a matter upon which the district court made no findings), could amount to "a sufficiently substantial 'risk of serious damage to [Chandler's] future health,'" *Farmer,* 511 U.S. at 843, 114 S.Ct. 1970, to be actionable as an unconstitutional condition of confinement. Finally, Chandler pleads with sufficient particularity that Corporal Brooks and the other Lorton officials acted with intent to harm him or in knowing disregard of his mental anguish and risk of being killed. Further inquiry may reveal that the correctional officers lacked the necessary intent, but such a conclusion is unwarranted at this stage of the litigation.

While the district court may conclude, upon further consideration of a more developed record, that Chandler's claims lack the necessary factual or legal bases, it cannot be said that his complaint "fail[s] ... to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). The district court's decision to dismiss Chandler's claim was therefore premature, and its judgment must be reversed.

### III. CONCLUSION

For the foregoing reasons, 28 U.S.C. § 1915(g) does not apply to Chandler's appeal. Furthermore, because the district court based its dismissal of the portion of Chandler's complaint alleging Eighth Amendment violations solely upon the erroneous premise that a verbal threat can "never" violate the Eighth Amendment, its judgment is

*Reversed.*