**Joseph "Thunder Quill" WILSON, Plaintiff,**

v.

**Ricky SILCOX, Defendant.**

**No. 499–CV–344–WS.**

United States District Court, N.D. Florida, Tallahassee Division.

March 7, 2001.

Jason Wilson, Jasper, FL, pro se.

Caryl Sue Kilinski, Attorney General State of Florida, Tallahassee, FL, for defendant.

## ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

STAFFORD, Senior District Judge.

Before the court is the magistrate judge's report and recommendation docketed February 9, 2001. *See* Doc. 54. The magistrate judge recommends that Defendant's motion for summary judgment be denied.

Upon review of the record, the court has determined that the report and recommendation should be adopted.

Accordingly, it is ORDERED:

1. The magistrate judge's report and recommendation is ADOPTED and incorporated by reference into this order.

2. Defendant's motion for summary judgment (doc. 20) is DENIED.

3. The case shall be returned to the magistrate judge for further proceedings.

## *REPORT AND RECOMMENDATION*

SHERRILL, United States Magistrate Judge.

Pending is Defendant's special report, doc. 20, which has previously been construed as a motion for summary judgment. Doc. 28. Plaintiff, a *pro se* inmate, has been advised of his obligation to respond to the motion with Rule 56 evidence. Doc. 28. Defendant has also separately filed two affidavits in support of the summary judgment motion. Docs. 21, 37. Plaintiff has responded in opposition. Docs. 48, 53.

Plaintiff's amended complaint alleged that on May 1, 1999, at approximately 6:30 A.M., Defendant Silcox violated his First Amendment rights when he threatened him with physical harm because Plaintiff and another inmate had filed a § 1983 suit against the Defendant's brother. Doc. 14. On that occasion, Plaintiff alleged that De-

fendant threatened to kill him. *Id.* He also claimed that on five separate occasions (May 26th, May 29th, June 10th, June 12th, and August 17th), Defendant Silcox verbally threatened Plaintiff (including additional death threats), harassed him, and called him names. *Id.* Because of the alleged death threats by the Defendant, Plaintiff was transferred from Liberty Correctional Institution. In addition to the retaliation claim, Plaintiff also asserts an Eighth Amendment claim for psychological harm. He seeks punitive and compensatory damages against Defendant, who is sued in his individual capacity only.

### I. Legal standards governing a motion for summary judgment

On a motion for summary judgment, Defendant initially has the burden to demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corporation v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). If accomplished, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of fact for trial. *Id.* Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), and a "scintilla" of evidence is insufficient. There must be such evidence that a jury could reasonably return a verdict for the party bearing the burden of proof. *Anderson v. Liberty Lobby,* 477 U.S. 242, 251, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). However, "the evidence and inferences drawn from the evidence are viewed in the light most favorable to the nonmoving party, and all reasonable doubts are resolved in his favor." *WSB–TV v. Lee,* 842 F.2d 1266, 1270 (11th Cir.1988).

## II. The relevant Rule 56(e) evidence

During the relevant period, Plaintiff was incarcerated at Liberty Correctional Institution and Defendant was employed there as a correctional officer. Doc. 20. In the summer of 1999, Plaintiff began writing letters complaining about death threats made by the Defendant. Doc. 20, ex. A–2, A–12, A–13, A–14. An investigation was made by the Inspector General's Office of the Department of Corrections. Doc. 20, ex. A–2. Defendant has submitted copies of relevant statements made as part of that investigation. *See* doc. 20, ex. A.

As relevant to the allegations made in this case,[1] Plaintiff wrote an affidavit as part of the Inspector General's investigation and stated his allegations against Defendant Silcox. Plaintiff testified that on May 1, 1999, he was stopped at the internal gate on his way back to his dormitory after eating breakfast. Doc. 20, ex. A–10—A–11. Officer Barfield stopped him at the gate and told Plaintiff "to relinquish [his] long john shirt." Doc. 20, ex. A–10. Plaintiff did so and then Officer Barfield was joined by the Defendant, Sergeant Cook, Correction Officers Mann and Wheatly [Wheetley[2]]. *Id.* At that point, Defendant Silcox did all the talking to Plaintiff. *Id.* Defendant Silcox told Plaintiff that because of the lawsuit he and inmate David Croft had filed against his brother, Michael Silcox, his brother worried every morning whether he would have a job. *Id.* Because of that, Defendant Silcox told Plaintiff that he was going to make Plaintiff worry every morning if this would be the day he got his "ass beat to death." *Id.* Defendant bragged to Plaintiff

that he and his brother had injured or killed several inmates at another institution but were acquitted and that they would "bury" Plaintiff and inmate Croft. *Id.* When Plaintiff did not react the way Defendant Silcox expected him to, Plaintiff said that the Defendant became "visibly hostile" and Plaintiff thought the Defendant would take a "swing" at him. Doc. 20, ex. A–11.

Plaintiff said that he initially thought Defendant was just trying "to run the boo game on" him, but as the altercation continued, Defendant Silcox grew more hostile. Doc. 20, ex. A–11. Afterwards, Defendant made Plaintiff "work around the internal gate for approximately (30) minutes." *Id.*

Plaintiff reported that several other officers were present during this discourse: Officer Mann, Officer Wheatly, Sergeant Cook, and Officer Barfield. Officer Barfield stated in his written affidavit, taken as part of the Inspector General's investigation, that he was at the internal gate on May 1, 1999, instructing inmates to turn in their sweat shirts and jackets. Doc. 20, ex. A–21. He testified that he did not hear Defendant Silcox make a verbal death threat to either Plaintiff or inmate Croft. *Id.* Officer Mann reported that he worked in the "chow hall" between 5:45 A.M. and 6:20 A.M. on May 1st. Doc. 20, ex. A–27. From there, he returned to his assigned dormitory and did not stop at the internal gate. *Id.* He did not observe Defendant make a death threat to Plaintiff or talk to any inmate. *Id.* Officer Wheatly had no recollection of the incident between Plaintiff and Defendant on May 1st. Doc. 20, ex. A–23.

---

1. Plaintiff alleged several different incidents which were investigated, but were not included in this action.

2. Plaintiff's spelling of this name has been used, but it appears from the affidavit that his surname is Wheetley.

It is noted that Plaintiff also wrote in his affidavit (attached to the special report) that Captain Mercer "observed the entire conversation as he sat inside the officer['s] station ...." Doc. 20, ex. A–11. Captain Mercer also submitted a written affidavit as part of the Inspector General's investigation and stated that he did not hear any officer make a death threat to Plaintiff. Doc. 20, ex. A–20. It should be noted, however, that Captain Mercer also stated that to the best of his knowledge, Defendant Silcox had not been assigned to his shift while he worked at Liberty Correctional Institution. Id.[3]

As part of the investigation, Defendant was also interviewed. Doc. 20, ex. A–8.[4] He was assigned to the internal gate on May 1st and was monitoring inmate traffic returning to the dormitories after breakfast. Id. He did not specifically recall having a conversation with Plaintiff and denied making any death threat to Plaintiff or any other inmate. Defendant admitted being aware of the lawsuit against his brother, Michael Silcox, and said they had discussed it from time to time; but Defendant denied trying to "boo up" Plaintiff because of the lawsuit. Defendant reported that he had never taken any type of disciplinary measures against Plaintiff and could not explain why Plaintiff would raise the allegations against him. Id. Sergeant Michael Silcox, brother of the Defendant, also denied making any verbal death threats against Plaintiff. Id. He acknowl-edged that he might have discussed the lawsuit filed by Plaintiff and inmate Croft against him with his brother, Defendant Silcox, but was not sure. Id.

As additional evidence, Defendant submitted the affidavit of Cindy Swier who was Plaintiff's classification officer while he was at Liberty Correctional Institution. Doc. 21. She testified that she recommended that Plaintiff be transferred because she felt he "had become too familiar with the institution and staff." Id. She explained that the classification department allows inmates to have access to their classification officers in the afternoon, but she instructed the inmates assigned to her that they should not come "more than once a week so that all inmates assigned to [her] would have the opportunity to meet with [her]." Id. Plaintiff ignored those instructions and went to Officer Swier's office "at least two and three times per week." Id. Furthermore, Officer Swier reported that Plaintiff often approached her on the compound and tried to engage in informal conversations with her. Id. She believed that his "familiarity could pose potential security problems and warranted a transfer to a new institution." Id. She denied that the decision to transfer Plaintiff was influenced in any manner by Ricky Silcox. Id. She also explained that although transfer decisions are initiated by classification officers, they are implemented by Central Office staff in Tallahassee. Id.

---

3. Several other affidavits were submitted and the affiants testified that they did not hear Defendant Silcox make any threats to Plaintiff. The relevance of these affidavits is not clear, however, because it is unknown where these officers were on May 1st. See doc. 20, exhibits A–22, A–23, A–24, and A–26. Further, some statements indicate that the officers did not work on a shift with the Defendant, see exhibits A–20 and A–26, or were not present at the time. Doc. 20, ex. A–27.

4. Defendant's statements are taken from the investigation report, but an affidavit of the Defendant has not been presented. The court need not decide whether the statements are admissible for truth. Defendant's burden is only to point to the absence of evidence supporting Plaintiff's claim, and Defendant may do this without relying on Rule 56(e) evidence.

Plaintiff submitted an affidavit in response to the summary judgment motion in which he testified that Defendant threatened Plaintiff, stating "we'll get you" and that these threats were in retaliation for the lawsuit Plaintiff had filed against the Defendant's brother. Doc. 48, attachment. Plaintiff reported that such threats were made on May 1, 1999; May 26, 1999; May 29, 1999; June 7, 1999; June 10, 1999; and June 12, 1999. *Id.* Plaintiff asserted that Correctional Officer Mann was present at the gate on May 1st when Defendant threatened to kill Plaintiff. *Id.*

Additionally, Plaintiff has presented evidence, by way of an affidavit from inmate Croft, that indicates both inmates were transferred out of Liberty Correctional Institution at the request of Mr. Morotta, the inspector who was investigating Plaintiff's claim regarding the death threats. Doc. 48, ex. D–1. A second affidavit by inmate Croft expressly denies Officer Swier's statement that Plaintiff's transfer was at her request because Plaintiff was too familiar with the institution. Doc. 48, ex. D–2. Inmate Croft avers that he was transferred because of the death threats, just as Plaintiff was, and that his transfer certainly had nothing to do with his being overly familiar with staff. *Id.*

## III. Analysis

Defendant argues that Plaintiff fails to state a claim for a First Amendment violation for access to court. Doc. 20, pp. 6–7. Plaintiff correctly notes that his claim is for retaliation, that is, punishment, for filing a suit, not a claim that his access to courts was impeded, and this argument is not on point. Doc. 48, p. 3, 4.

Defendant also argues that Plaintiff does not state a claim when he contends that Defendant transferred him "from Lib-

erty Correctional Institution to Calhoun Correctional Institution in retaliation for his filing a lawsuit against Defendant's brother." Doc. 20, p. 7. Defendant maintains that the Due Process Clause does not give Plaintiff a right to be housed at the institution of his choice. *Id.*, at 8–9. As noted by Plaintiff in his response, he did not claim that his transfer was arranged by the Defendant or that the Defendant had a direct role in his transfer. Doc. 48, p. 4. He claimed only that he was transferred to protect him from Defendant's death threats and that, as a result of the transfer, his conditions of confinement were worsened. *Id.*, at 5. Plaintiff does not claim that he has a due process right to be incarcerated at any specific location. *Id.*, at 8.

■ Defendant does acknowledge that "a punitive act taken against a prisoner in retaliation for his exercise of First Amended rights to seek redress of grievances states a claim upon which relief may be granted." Doc. 20, p. 9, *citing Bridges v. Russell,* 757 F.2d 1155 (11th Cir.1985); *Wright v. Newsome,* 795 F.2d 964, 968 (11th Cir.1986). However, in recognizing the existence of a retaliation claim, Defendant argues that he did not retaliate against Plaintiff by transferring him. Doc. 20, p. 10. As noted above, that is not Plaintiff's claim. Plaintiff claimed that Defendant verbally harassed him and threatened him with bodily harm, including death, because Plaintiff filed a lawsuit. Defendant argues that verbal harassment is not a cognizable claim under § 1983, doc. 20, p. 10, but fails to address whether such harassment, if done in retaliation for an inmate's having filed a lawsuit, would state a claim.

■ It is well settled in this circuit that "prison officials may not retaliate against an inmate for exercising a constitutionally protected right." *Adams v. James,* 784 F.2d 1077, 1082 (11th Cir.1986) (reaffirming the principle that "prison officials may not retaliate against an inmate for exercising a constitutionally protected right."), *relying on Bridges v. Russell,* 757 F.2d 1155 (11th Cir.1985). *See also Mitchell v. Farcass,* 112 F.3d 1483, 1490 (11th Cir.1997)(reversing the district court's dismissal of an inmate's First Amendment claim for retaliation); *Harris v. Ostrout,* 65 F.3d 912, 916–17 (11th Cir.1995) (holding that summary judgment was inappropriate on First Amendment claim where prisoner submitted affidavits by other prisoners which inferred that the defendant's statements suggested he had filed disciplinary reports against plaintiff in retaliation for earlier litigation); *Wildberger v. Bracknell,* 869 F.2d 1467, 1468 (11th Cir. 1989) (noting that if an inmate is disciplined as "the result of his having filed a grievance concerning the conditions of his imprisonment, he" has clearly "raised a constitutional issue"); *Wright v. Newsome,* 795 F.2d 964, 968 (11th Cir.1986) (holding that an inmate may still present a First Amendment retaliation claim even though the complaint alleges facts "that might not otherwise be offensive to the Constitution," such as a search or the confiscation and destruction of nonlegal materials.). "Litigation undertaken in good faith by a prisoner motivated to bring about social change and protect constitutional rights in the prison is" at the core of the First Amendment's protections. *Adams,* 784

F.2d at 1081. Furthermore, "[t]he gist of a retaliation claim is that a prisoner is penalized for exercising" his constitutional right to free speech, redress of grievances, or similar activity. *Thomas v. Evans,* 880 F.2d 1235, 1242 (11th Cir.1989). "The penalty need not rise to the level of a separate constitutional violation." *Thomas,* 880 F.2d at 1242 (citations omitted).

■ In this case, Defendant has presented evidence that other correctional officers did not hear Defendant threaten Plaintiff. In several of those affidavits, it is unclear where the affiant was and whether he would have heard such statements had they been made. Additionally, several of the affidavits indicate that the affiant was not present at the time of the alleged incident on May 1, 1999, and have no personal knowledge of the allegations. Further, Defendant has not addressed any dates beyond May 1st in which Plaintiff alleged Defendant also threatened him.[5] Plaintiff has, however, provided evidence that Defendant made statements threatening him for having sued his brother in an earlier case. Based on the evidence at this time, Defendant's motion for summary judgment should be denied on Plaintiff's First Amendment claim. Furthermore, as illustrated *supra,* the defense of qualified immunity is inapplicable here as it was clearly established in 1999 that a correctional officer could not retaliate against an inmate because he had filed a § 1983 complaint.

■ One additional matter, however, will be raised *sua sponte* as Defendant did not specifically address Plaintiff's Eighth Amendment claim. In recognizing the Eighth Amendment's prohibition on the

---

**5.** Defendant did not address Plaintiff's allegations relating to the alleged threats on May

26, May 29, June 10, Jun 12, or August 17th. *See* doc. 14.

infliction of "cruel and unusual punishments," the Supreme Court has forged two kinds of prisoner cases that are actionable: complaints regarding conditions of confinement and complaints of an excessive use of force. *See, e.g., Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Whitley v. Albers,* 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986); *Farmer v. Brennan,* 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). In a conditions of confinement case, the inmate must show that an official disregarded an excessive risk to the inmate's health or safety. *Farmer,* 511 U.S. at 837, 114 S.Ct. 1970. In an excessive force case, the inmate must demonstrate that the defendant acted " 'maliciously and sadistically for the very purpose of causing harm.' " *Whitley,* 475 U.S. at 320–21, 106 S.Ct. 1078, *quoting Johnson v. Glick,* 481 F.2d 1028, 1033, *cert. denied* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973).

■ Although Plaintiff did not allege any actual physical abuse or contact by Defendant, he did allege repeated verbal death threats. Generally, "verbal threats, without more," are insufficient "to state a cause of action under the Eighth Amendment." *Chandler v. District of Columbia Dept. of Corrections,* 145 F.3d 1355, 1360 (D.C.Cir.1998), *citing Hudson v. McMillian,* 503 U.S. 1, 16, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)(Blackmun, J., concurring). Nevertheless, Justice Blackmun observed in his concurring opinion that:

> ... [i]t is not hard to imagine inflictions of psychological harm—without corresponding physical harm—that might prove to be cruel and unusual punishment.... [T]he Eighth Amendment pro-

hibits the unnecessary and wanton infliction of "pain," rather than "injury." ... "Pain" in its ordinary meaning surely includes a notion of psychological harm.

*Hudson,* 503 U.S. at 16, 112 S.Ct. 995, *quoted in Chandler,* 145 F.3d at 1360. The court noted in *Chandler* that the Eighth Circuit has held open the possibility that verbal threats "could violate the Eighth Amendment if the resulting harm were sufficiently severe." 145 F.3d at 1360–1361, *citing Freitas v. Ault,* 109 F.3d 1335, 1338 (8th Cir.1997) (recognizing the possibility of a § 1983 action for physical and psychological harm from sexual harassment but declining to find that "welcome and voluntary sexual interactions" could constitute an Eighth Amendment violation), and *citing Watson v. Jones,* 980 F.2d 1165 (8th Cir.1992) (reversing grant of summary judgment based on disputed evidence concerning whether female correctional officer subjected the male inmate plaintiffs to sexual harassment by "physically intrusive pat-down searches.").

It is worth noting that other claims of verbal threats have been recognized by the courts as potentially violative of the Eighth Amendment if accompanied by extreme psychological harm:; *Babcock v. White,* 102 F.3d 267, 273 (7th Cir.1996) (noting that "the Constitution does not countenance psychological torture merely because it fails to inflict physical injury."); *Northington v. Jackson,* 973 F.2d 1518, 1522–24 (10th Cir.1992) (finding that "psychological injury may constitute pain" under the Eighth Amendment's excessive force standard where parole officer held gun to prisoner's head while threatening to kill him); *see also Freitas,* 109 F.3d at 1338. The *Northington* court made a

point of distinguishing the earlier case of *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir.1979), by construing the allegations there, which were held insufficient to state a § 1983 claim, as being nothing more than "a sheriff's idle threat to hang a prisoner." Thus, despite the general principle that verbal threats are insufficient to state a claim, some cases have recognized that verbal threats to kill an inmate do present an Eighth Amendment claim. *E.g., Chandler*, 145 F.3d at 1360–61; *Northington*, 973 F.2d at 1524; *Hudspeth v. Figgins*, 584 F.2d 1345, 1348 (4th Cir.1978)(reversing dismissal of prisoner's § 1983 suit alleging that a guard threatened to have prisoner killed because he had a suit pending against the prison and noting that "intentionally placing [the inmate] in fear for his life if he pressed his court actions ... would inflict such suffering as to amount to unconstitutional punishment.").

■ It is difficult to view threats from a correctional officer that he will kill an inmate because of a pending lawsuit as anything more than "malicious and sadistic." These threats, as Plaintiff's affidavit demonstrates, were presented to him along with statements that Defendant and his brother had caused physical harm or even death to inmates in the past without retribution. Although it is unclear whether Plaintiff could present evidence in support of the required showing that he suffered severe mental anguish, he was not called upon to do so. Therefore, this claim should not be dismissed on summary judgment.

## IV. Conclusion

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants' motion for summary judgment, doc. 20, be **DENIED**, and that this case be **REMANDED** to the undersigned for further proceedings.