# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued September 13, 2010          Decided January 21, 2011

No. 09-5315

IONA D. CALHOUN,
APPELLANT

v.

MARTHA N. JOHNSON, ADMINISTRATOR, UNITED STATES
GENERAL SERVICES ADMINISTRATION,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:06-cv-01441)

*James L. Fuchs* argued the cause for appellant. With him
on the briefs were *Ari Taragin* and *Michael J. Snider*.

*Claire Whitaker*, Assistant U.S. Attorney, argued the cause
for appellee. With her on the brief were *Ronald C. Machen, Jr.*,
U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney.

Before: GINSBURG, ROGERS, and GARLAND, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*: Plaintiff Iona Calhoun brought suit against her employer, the General Services Administration (GSA), claiming (inter alia) discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* The district court granted summary judgment in favor of GSA. Before us on appeal are Calhoun's claims that GSA violated Title VII by failing to select her for positions in its Office of Information Technology and Office of Real Property. For the reasons set forth below, we reverse the district court's grant of summary judgment dismissing Calhoun's claim that GSA unlawfully discriminated against her in connection with the Office of Information Technology position, and we remand that claim for trial. We affirm the district court's judgment with respect to the remaining claims.

I

In 2000, Iona Calhoun, an African-American, was a GS-13 Computer Specialist in GSA's Office of Information Technology (OIT). In December of that year, she applied for a newly created position as a GS-14 Computer Specialist. OIT's Division Director, Paul Whitson, left on vacation before the application period ended and before Calhoun applied. Whitson assigned his deputy, Wanda Peterson-Parker, as the selecting official in his absence. As he was leaving, however, he directed her to select Tokey Bradfield, an Asian-American, for the position.[1] Peterson-Parker followed Whitson's directive and selected Bradfield. *See* GSA Br. 2.

---

[1]*See* GSA Br. 2 ("For purposes of this appeal, GSA concedes that Whitson directed Peterson-Parker to select Bradfield.").

By 2003, Calhoun had become a Program Specialist in GSA's Office of Real Property (ORP). During 2003-04, she applied for three higher-paying ORP vacancies. ORP's director, Stanley Langfeld, did not select Calhoun for any of the three positions. Instead, he selected Kenneth Holstrom, Robert Burmeister, and Virginia McDonald, all of whom are white.

Calhoun's Title VII suit alleges that, by failing to select her for the OIT and ORP positions, GSA discriminated against her on account of race and retaliated against her for engaging in protected activity. The district court disagreed and granted the government's motion for summary judgment. With respect to the OIT position, the court concluded that, "[b]ecause Calhoun has not presented any evidence to refute Whitson's nondiscriminatory reason [for hiring Bradfield], GSA is entitled to summary judgment." *Calhoun v. Prouty*, 643 F. Supp. 2d 87, 94 (D.D.C. 2009). With respect to the ORP positions, the court found that Calhoun had failed to submit any "evidence that would reasonably support a conclusion that Langfield's stated reasons [for selecting Holstrom, Burmeister, and McDonald] are pretextual." *Id.*

## II

"We review the district court's decision to grant summary judgment de novo." *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A dispute about a material fact "is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In making that determination, the court "must view the evidence in the light most favorable to [the nonmoving

party], draw all reasonable inferences in her favor, and eschew making credibility determinations or weighing the evidence." *Lathram v. Snow*, 336 F.3d 1085, 1088 (D.C. Cir. 2003).

Title VII prohibits federal agencies from discriminating against their employees on account of race, 42 U.S.C. § 2000e-16(a), and from retaliating against them for asserting their rights under Title VII, *see Lathram*, 336 F.3d at 1088. Where, as here, the plaintiff lacks direct evidence of discrimination or retaliation, we analyze her claims under the framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-05 (1973), as simplified by *Brady v. Office of Sergeant at Arms,* 520 F.3d 490, 494 (D.C. Cir. 2008). Under *Brady*, once the employer has proffered a legitimate, non-discriminatory reason for a challenged employment action, the "central question" is whether "the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race." 520 F.3d at 494; *see Jones v Bernanke*, 557 F.3d 670, 678 (D.C. Cir. 2009) (holding that "these principles apply equally to retaliation claims"). "Usually, proffering 'evidence from which a jury could find that [the employer's] stated reasons . . . were pretextual . . . will be enough to get a plaintiff's claim to a jury.'" *George v. Leavitt*, 407 F.3d 405, 413 (D.C. Cir. 2005) (quoting *Carpenter v. Fed. Nat'l Mortgage Ass'n*, 165 F.3d 69, 72 (D.C. Cir. 1999)).

In subpart A, we consider Calhoun's claims regarding GSA's failure to select her for the OIT Computer Specialist position. In subpart B, we consider her claims regarding the agency's failure to select her for the ORP vacancies.

5

A

Calhoun contends that Whitson discriminated against her on the basis of race by directing his deputy, Peterson-Parker, to hire Bradfield for the OIT position. GSA responds that Whitson could not have knowingly discriminated against Calhoun because he issued his directive as he was leaving for vacation -- before Calhoun had applied for the job. Calhoun counters, supported by testimony from Peterson-Parker, that she was one of only two employees in Whitson's division who were qualified to apply for the position. (Peterson-Parker pointedly excluded Bradfield from that list. EEOC Hr'g Tr. 208-09 (June 6, 2006).) It stands to reason, Calhoun argues, that Whitson would have expected one of the few qualified GS-13 Computer Specialists in his division to apply for his new GS-14 Computer Specialist position. The fact that Calhoun had not done so by the time Whitson left for vacation is hardly dispositive, she maintains, given that the application period had not yet closed. Peterson-Parker's testimony that Whitson "knew who was eligible and who could apply for the position," *id*. at 207, supports Calhoun's contention. This evidence is sufficient for a reasonable jury to conclude that Whitson knew Calhoun would likely be a candidate for the position, and thus to reject the argument that he could not have knowingly discriminated against her.

GSA also suggests that Whitson did not discriminate, but merely gave the position to Bradfield because she was already performing the work. There is, however, a genuine dispute on that point. Even Whitson's strongest statement claimed nothing more than that "Bradfield had performed work *similar* to the work required by the announced position, but at a lower grade level . . . . She was clearly ready and able to undertake similar work at the higher grade level." Whitson Aff. 3 (Mar. 12, 2004) (emphasis added). Whitson's statement that Bradfield was "ready" to perform "similar" work suggests he believed that

Bradfield was qualified for the new position. It does not indicate that she was already performing its responsibilities. Moreover, Peterson-Parker bluntly disputed GSA's contention: she testified that Bradfield had neither performed similar work nor demonstrated the capacity to do so. EEOC Hr'g Tr. 175-77.

GSA's principal defense to the claim of discriminatory non-selection is that Whitson chose Bradfield because he believed she was the most qualified candidate. Peterson-Parker, however, strongly disputed that Bradfield was better qualified than Calhoun. *See id.* at 176. And because Peterson-Parker was Whitson's deputy and at least formally the selecting official for the position, *see* EEO Counselor's Rep. 4 (June 7, 2001); EEOC Hr'g Tr. 126, a jury could reasonably conclude that she was well-positioned to evaluate the candidates' relative qualifications.

Peterson-Parker's testimony regarding those qualifications was quite specific. On three of the four factors listed in the job vacancy notice, Peterson-Parker testified that Calhoun was the superior candidate by a wide margin. Calhoun, she said: (1) had superior "knowledge of internet and Federal Information Technology policies, principles, and guidance"; (2) had better "demonstrated the ability to provide guidance and assistance to inter-agency committees [and] other constituencies in support of government-wide activities"; and (3) had a greater "ability to communicate effectively, orally and in writing." EEOC Hr'g Tr. 145-47, 152-54, 160-63, 165-67; Peterson-Parker Dep. 28-31 (Aug. 12, 2005). On a scale of 0 to 100, Peterson-Parker gave Calhoun scores of 90, 95, and 100 on these factors; she gave Bradfield scores of only 60, 40, and 50. EEOC Hr'g Tr. 152-54, 163, 165-67.

Moreover, Peterson-Parker testified to a significant failing on Bradfield's part, which she also substantiated with

specificity. Bradfield, she said, was unable to effectively provide guidance to inter-agency committees, a skill expressly required in the vacancy announcement. As evidence, Peterson-Parker testified that Bradfield refused her requests to address quarterly inter-agency forums because "it was a form of public speaking she did not care to do." Peterson-Parker Dep. 28. Bradfield, she said, "was not a communicator." *Id*.; *see also* EEOC Hr'g Tr. 162 (testifying that Bradfield "was insecure with her oral communication skills").

GSA maintains that Whitson's decision was nonetheless justified because Bradfield was superior with respect to a fourth job factor that Whitson believed to be of paramount importance: "technical skill relating to the GSA internet page." EEO Counselor's Rep. 4 (June 7, 2001). But Peterson-Parker contradicted Whitson's evaluation of the candidates' technical skills, rating the two as roughly equivalent in that regard. *Id.* at 154-55. More important, all four factors were listed in the vacancy announcement, and Peterson-Parker testified that Calhoun was not only far superior in three of those respects, but far superior overall. Indeed, she gave Calhoun an overall rating of 100/100, while giving Bradfield a rating of only 50/100. EEOC Hr'g Tr. 167. Based on Whitson's affidavit, GSA further maintains that he reasonably discounted Calhoun's qualifications because they "were based primarily on education and . . . she did not have the depth of experience [Bradfield] had." Whitson Aff. 3 (Mar. 12, 2004). But once again, Peterson-Parker offered contrary testimony, stating that Calhoun was significantly more experienced with respect to the majority of the factors listed in the vacancy announcement. *See, e.g.*, EEOC Hr'g Tr. 152-54, 160-63, 165-67 (testifying that Calhoun "was highly qualified based upon the work she had done for years" and had superior communications skills "based upon the experience gained over the years"); *see also* Peterson-Parker Dep. 20-23.

As we have repeatedly held, "'[i]f a factfinder can conclude that a reasonable employer would have found the plaintiff to be significantly better qualified for the job, but this employer did not, the factfinder can legitimately infer that the employer consciously selected a less-qualified candidate -- something that employers do not usually do, unless some other strong consideration, such as discrimination, enters into the picture.'" *Lathram,* 336 F.3d at 1091-92 (quoting *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1294 (D.C. Cir. 1998) (en banc)); *see Holcomb v. Powell*, 433 F.3d 889, 897 (D.C. Cir. 2006). Under such circumstances, a grant of summary judgment in favor of the employer is unwarranted. *Aka*, 156 F.3d at 1299 (reversing grant of summary judgment where there was "sufficient evidence in the record so that a reasonable jury could conclude that [the plaintiff] was markedly more qualified than [the selectee], thus throwing into doubt the reason given for his rejection"); *see Holcomb*, 433 F.3d at 897; *Lathram*, 336 F.3d at 1091. In Calhoun's case, "because a reasonable jury could find that [she] was not only qualified for the job but substantially more qualified than [the selectee], and because such a jury could further conclude that [GSA's] assertions to the contrary were pretextual, the district court's grant of summary judgment on this count was in error and must be reversed." *Lathram*, 336 F.3d at 1092.[2]

---

[2]In addition to contending that GSA failed to select her for the OIT position because of racial discrimination, Calhoun further contends that the non-selection constituted retaliation for her prior "EEO activity." Am. Compl. ¶ 67. The only such activity that she identifies is an "EEOC complaint" that she apparently filed in 1989 and settled in 1993. *See* Am. Compl. ¶¶ 4, 14. This activity, however, took place at least seven years before the non-selection of which she complains. Calhoun offers no direct evidence that the reason for her non-selection was retaliatory, and the length of time between the activity and the non-selection is far too great to suggest a causal connection on its own. *See Clark Cnty. Sch. Dist. v. Breeden*, 532

B

Calhoun also charges that GSA discriminated and retaliated against her by selecting three other candidates for positions as Program Experts in the Office of Real Property during 2003-04. With respect to these positions, however, the qualifications gap between Calhoun and the selectees ran decidedly in the selectees' favor.

Langfeld, the ORP supervisor, testified that he chose the winning candidates on the basis of their real estate experience, and that Calhoun's experience was inferior to that of the selectees. Langfeld Aff. 3-4 (June 15, 2004); Langfeld Aff. 2-4 (Dec. 13, 2004); Langfeld Dep. 12-15 (Jan. 11, 2006). Holstrom, Burmeister, and McDonald, the selectees, had twenty-nine, sixteen, and twenty-two years of real estate experience respectively. Langfeld Aff. 3 (June 15, 2004); Langfeld Aff. 3 (Dec. 13, 2004). Calhoun, by contrast, had no more than three. Calhoun Dep. 87 (Apr. 10, 2008). Although Calhoun maintains that real estate experience was not "apposite to the Program Expert position," Calhoun Br. 32, she offers no evidence for that assertion.

Calhoun contends that she was more qualified than Burmeister and Holstrom because GSA's human resources department gave her a higher initial rating than it gave them. But a qualifications gap alone will not support an inference that an employer's claim that it hired based on merit was pretextual

U.S. 268, 273 (2001) (finding that a two-year gap was too great to raise the inference of causality necessary to a prima facie case). Accordingly, the district court did not err in granting summary judgment for GSA on the OIT retaliation claim.

unless the gap is "great enough to be inherently indicative of discrimination." *Adeyemi v. District of Columbia*, 525 F.3d 1222, 1227 (D.C. Cir. 2008) (internal quotation marks omitted). In this case it was not. With respect to Burmeister, Calhoun's evidence is -- at best -- that her initial rating was only marginally higher than his. *See* Calhoun Dep. 86-87 (Apr. 10, 2008) (asserting that Calhoun received a score of 91.60, while Burmeister received a score of 91.49). With respect to Holstrom, she says nothing more than that her rating was "higher," with no measure of quantification at all. *Id.* at 64-65. Moreover, Calhoun does not dispute the district court's finding that the selecting officer would not even have received those initial ratings. *See Calhoun*, 643 F. Supp. 2d at 94. Under these circumstances, and considering her far more limited real estate experience, the district court correctly held that Calhoun's claims regarding the ORP positions could not survive.

## III

For the foregoing reasons, we reverse the district court's dismissal of Calhoun's claim that GSA violated Title VII by failing to select her for the OIT position in 2000, and we remand that claim for trial. With respect to Calhoun's other claims, the district court's judgment is affirmed.

*So ordered.*