# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued September 20, 2013       Decided December 24, 2013

No. 12-5130

OLGA HERNANDEZ,
APPELLANT

v.

PENNY SUE PRITZKER, SECRETARY, U.S. DEPARTMENT OF
COMMERCE,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:08-cv-01716)

*Alan Lescht* argued the cause and filed the briefs for appellant.

*Carl E. Ross*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Ronald C. Machen Jr.*, U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney.

Before: GARLAND, *Chief Judge*, and GINSBURG and SENTELLE, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* GINSBURG.

GINSBURG, *Senior Circuit Judge*: Olga Hernandez, a Hispanic woman, appeals the district court's entry of summary judgment for her former employer, the United States Department of Commerce, on Hernandez's claim that the Department retaliated against her for filing a complaint of workplace harassment based upon her sex and national origin, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–3(a). Specifically, Hernandez claimed the Department retaliated by placing her on an unsuitable detail, changing her employment status to probationary, and terminating her employment. Because no reasonable juror could find any of these actions motivated by retaliation, we affirm the judgment of the district court.

## I. Background

From 1998 to 2005 Hernandez worked as a Patent Examiner at the Patent and Trademark Office (PTO), an agency within the Department of Commerce. In May 2006, six months after she left the PTO, Hernandez was hired as a General Engineer by the Nuclear and Missile Technology Division (NMTD), a unit of the Bureau of Industry and Security (BIS), which is also within the Department of Commerce. She was issued a Notification of Personnel Action (SF-50) that indicated hers was a career appointment. Although such an appointment is usually subject to a one-year probationary period, *see* 5 C.F.R. §§ 315.801(a), 315.802(a), Hernandez's SF-50 made no reference to probation.

Hernandez's new position at the NMTD required her to review applications for licenses to export commodities relevant to nuclear and missile proliferation. Hernandez was,

by her own account, sometimes confused about her job responsibilities, and after a few months one of her colleagues expressed concern to Hernandez's second-line supervisor about her handling of several cases. In her first performance review, which was issued in October 2006, Hernandez nevertheless received a rating of 3 out of 5 in all areas. Her immediate supervisor, Steven Clagett, noted that her performance in all areas was "good and ... appropriate for a GS-12 with only a partial year of experience."

In December 2006 Hernandez filed an informal complaint of workplace harassment with the Department's Office of Civil Rights, which caused Clagett's supervisor, Steven Goldman, to meet with Hernandez about her concerns. At the meeting Hernandez alleged, among other things, Clagett had unfairly denied her a cash bonus and her colleagues had exchanged sexually charged comments in her presence. When Hernandez asked Goldman whether she could be transferred to another office, he said a transfer would be a last resort but he might be able to arrange it if the receiving office and Hernandez agreed. Hernandez asked for some time to consider how she wanted to proceed, and two weeks later asked Goldman in writing to "transfer [her] outside of [C]ommerce ... or outside BIS." Despite having been advised by Goldman that he could transfer her only within the BIS, Hernandez did not identify any particular office within the BIS to which she wanted to transfer.

In January 2007 Goldman detailed Hernandez to the Chemical and Biological Controls Division (CBCD) within the BIS. Hernandez's new position required her to review applications for licenses to export items such as pumps and valves, chemicals, and biological equipment relevant to nonproliferation or with foreign policy implications. Hernandez was unhappy with the detail because her

background in electrical engineering did not prepare her, in her view, for work with biological and chemical material. Hernandez claims she then heard from colleagues that there were open positions in "the encryption and radar departments" of the BIS, to which she believed she was by background better suited; she asserts she emailed Goldman's supervisor asking for a meeting but he declined. Even so Hernandez did not contact Goldman about her unhappiness at the CBCD or ask him to move her to another unit.

In February 2007 Hernandez filed a formal Equal Employment Opportunity (EEO) complaint with the Department's Office of Civil Rights. She alleged, among other things, the Department had retaliated against her for previously having complained about discrimination by detailing her "to a chemical engineering job, despite her education and experience being in electrical engineering."

In April 2007 the Department issued a new SF-50, labeled a "correction," changing Hernandez's employment status to probationary. A Department official immediately asked for an explanation from a Human Resources employee, who explained that, although prior federal service may be credited toward probation in some circumstances, Hernandez's prior service with the PTO could not be credited because she had a break in service of more than 30 days and because her position at the BIS was different from the one she had at the PTO. *See* 5 C.F.R. § 315.802(b) ("Prior Federal civilian service ... counts toward completion of probation when the prior service is in the same agency ..., is in the same line of work ..., [and] is followed by no more than a single break in service that does not exceed 30 calendar days"). Hernandez's appointment form, which made no mention of the yearlong probationary period, therefore required correction.

Two weeks after changing her status to probationary, the Department terminated Hernandez's employment based upon her "failure to demonstrate acceptable performance during [the] probationary period." In the accompanying performance review, Clagett explained Hernandez had been rated satisfactory in October 2006 "largely because her mistakes were initially considered to be the result of inexperience, or 'learning mistakes.'" Since then, however, it had become "clear that [her] mistakes are reflective of her performance abilities, which are not acceptable for a GS-12 engineer." Clagett noted that while detailed to the CBCD, Hernandez had incorrectly processed 32 out of 120 license applications and 6 out of 17 commodity classifications even though her assignments were not particularly difficult and she had been apprised repeatedly of her mistakes. This performance, Clagett concluded, was "below expectations."

Soon thereafter Hernandez amended her formal EEO complaint to add her termination to the list of allegedly retaliatory acts. When more than 180 days had passed without a final decision from the Office of Civil Rights, *see* 29 C.F.R. § 1614.108(e), Hernandez filed suit in the district court claiming, as relevant here, the Department retaliated against her for filing an EEO complaint by (1) detailing her to the CBCD, (2) changing her status to probationary, and (3) terminating her employment.

The district court entered summary judgment for the Department. *Hernandez v. Gutierrez*, 850 F. Supp. 2d 117, 125 (D.D.C. 2012). The court first held Hernandez's detail to the CBCD was not an "adverse action" because it "did not affect her pay, grade, or job responsibilities" and was done at her request. *Id.* at 122. The court next held Hernandez had failed to exhaust her administrative remedies with respect to her probationary status because her EEO complaints had not

challenged the change in her employment status; alternatively, the court reasoned, the Department "provided a legitimate, non-discriminatory reason for the adverse action — to correct an administrative error — and [Hernandez] has failed to produce sufficient evidence for a reasonable jury to infer that it was retaliatory." *Id.* at 123. Finally, the court held "Hernandez provided insufficient evidence either to discredit [the Department's] asserted non-discriminatory reason for her termination — poor performance — or to show that the action was retaliatory." *Id.* at 124.

## II. Analysis

Title VII prohibits not only outright discrimination by an employer against an employee on the basis of his or her "race, color, religion, sex, or national origin," 42 U.S.C. § 2000e–2(a), but also retaliation based upon an employee's having "made a charge, testified, assisted, or participated in any manner" in a Title VII "investigation, proceeding, or hearing," *id.* § 2000e-3(a). Where, as here, a plaintiff proffers only indirect evidence of retaliation, we analyze her claims within the framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973), as simplified by *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008) and *Jones v. Bernanke*, 557 F.3d 670, 678–79 (D.C. Cir. 2009):

> [Once] the employer has proffered a legitimate, non-retaliatory reason for a challenged employment action, the central question is whether the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-retaliatory reason was not the actual reason and that the employer intentionally retaliated against the employee in violation of Title VII.

*McGrath v. Clinton*, 666 F.3d 1377, 1383 (D.C. Cir. 2012) (internal brackets and quotation marks omitted). Because the Department has offered legitimate, non-retaliatory reasons for detailing Hernandez to the CBCD, changing her status to probationary, and terminating her employment, the "central question" in this case is whether Hernandez has produced sufficient evidence for a reasonable jury to find those reasons were but pretexts for retaliation.

A. Detail to the CBCD

The district court rejected Hernandez's claim that the Department retaliated against her by detailing her to the CBCD on the ground that the detail "was not an adverse action." 850 F. Supp. 2d at 122. We need not pass upon that ground, however. We may assume the detail to the CBCD was adverse and yet affirm the judgment for the Department upon the indisputable ground that Hernandez failed altogether to rebut the Department's legitimate, non-retaliatory explanation for its action — *viz.*, "Hernandez requested that she be transferred out of her unit." *See Taylor v. Solis*, 571 F.3d 1313, 1320 n.* (D.C. Cir. 2009) ("The court can resolve [the central question of retaliation *vel non*] in favor of the employer based either upon the employee's failure to rebut its explanation or upon the employee's failure to prove an element of her case — here that her employer took a materially adverse action against her"); *Kleiman v. Dep't of Energy*, 956 F.2d 335, 339 (D.C. Cir. 1992) ("[W]e may affirm on different grounds the judgment of a lower court 'if it is correct as a matter of law'" (quoting *United States v. Garrett*, 720 F.2d 705, 710 (D.C. Cir. 1983)).

Hernandez argues the Department's explanation is not credible because she had no choice but to accept the detail to the CBCD. She claims the failure of the Department to offer

her one of the putatively open positions "in the encryption and radar departments" of the BIS, which were "more suited to [her] background and experience," effectively forced her "to accept the detail [to the CBCD] in order to get away from the hostile work environment" at the NMTD. Because the Department "gave her no choice in the matter," Hernandez argues, she can "hardly be said to have agreed to the detail" to the CBCD.

Hernandez has not met her burden of producing "sufficient evidence for a reasonable jury to find that the [Department's] asserted non-retaliatory reason was not the actual reason" for its detailing her to the CBCD. *McGrath*, 666 F.3d at 1377 (internal brackets and quotation marks omitted). As an initial matter, the only evidence Hernandez offers of the alleged vacancies in the encryption and radar departments is her own statement claiming two colleagues told her about the openings; this of course is "pure hearsay" and "counts for nothing in an opposition to summary judgment." *Id.* at 1383 (internal quotation marks omitted). Nor does Hernandez offer any evidence that Goldman knew of the alleged vacancies. Even if we were to assume, however, there were other positions available within the BIS and Goldman was aware of them, the undisputed evidence shows Hernandez requested a transfer out of the NMTD, did not identify a preferred office within the BIS, and did not complain to Goldman about the CBCD even once she was there. On these facts, no reasonable jury could find the Department's asserted non-retaliatory reason for detailing Hernandez to the CBCD — that she had requested a transfer — was a pretext for retaliation.

B.  Change in Probationary Status

Pursuant to its authority to implement Title VII as it applies to the federal government, the Equal Employment Opportunity Commission has established "detailed procedures for the administrative resolution of discrimination complaints;" a complainant "must timely exhaust these administrative remedies before bringing [her] claims to court." *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997).  In her formal EEO complaint Hernandez alleged the Department retaliated against her by terminating her employment but did not allege the Department retaliated by changing her status to that of a probationer.  The district court therefore held Hernandez failed to exhaust her administrative remedies with respect to her change to probationary status. 850 F. Supp. 2d at 123.

In her brief Hernandez advances two arguments that we should consider the merits of her change of status claim despite her failure to raise it in her EEO complaint.  First, she argues her change of status claim "is related to her wrongful termination claim and/or could have been expected to grow out of that claim."  On this theory, Hernandez "gave the [Department] an opportunity to resolve her" change of status claim by raising the "like or related" claim of retaliatory termination.  *Weber v. Battista*, 494 F.3d 179, 184 (D.C. Cir. 2007); *see also Wiley v. Glassman*, 511 F.3d 151, 160 (D.C. Cir. 2007).  Alternatively, Hernandez says "the claim regarding the change in [her] status is not a new claim but rather a detail of [her] claim that the agency wrongfully terminated her."  On this theory, Hernandez did not need to exhaust her allegation that the Department improperly put her on probationary status because that allegation was merely evidence in support of her claim of retaliatory termination, not an independent claim of retaliation.  At oral argument

Hernandez expressly abandoned her first theory in favor of her second.

We shall assume without deciding that we may consider Hernandez's change to probationary status as evidence of her allegedly retaliatory termination despite her failure to identify the change in her administrative complaint. Treating Hernandez's change of status as evidence, however, does not avoid the need to evaluate the Department's stated reason for making that change. Evidence must be relevant in order to be admissible, and the relevance of the Department's changing Hernandez's status to probationary depends squarely upon its reason for that change. If, as the Department claims, it changed Hernandez's status in order to correct a clerical error, then the change would not tend to prove the Department went on to terminate her with retaliatory intent. *See* FED. R. EVID. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action"). If, on the other hand, the Department's explanation is not credible, then its changing Hernandez's status to probationary — and thereby making it easier to terminate her — would indeed tend to prove her termination was retaliatory.

The Department's explanation for changing Hernandez's status to probationary is supported by the law and by the facts of this case. Section 315.801(a)(1) of 5 C.F.R. provides: "The first year of service of an employee who is given a career or career-conditional appointment ... is a probationary period when the employee [w]as appointed from a competitive list of eligibles." Hernandez's appointment form shows — and she does not dispute — hers was a career appointment. Therefore she was subject to a yearlong probationary period if she was "appointed from a competitive

list." Although the Action Code on the copy of Hernandez's appointment form in the record is obscured, the other fields on that form are consistent with the Department's position that she was hired from a competitive list, as is the corrected form, which reports the Code was "100," the correct code for such a hire. *See* UNITED STATES OFFICE OF PERSONNEL MANAGEMENT, GUIDE TO PROCESSING PERSONNEL ACTIONS tbl. 9-A (Sept. 2013) [hereinafter OPM Guide]*, available at* http://www.opm.gov/policy-data-oversight/data-analysis-documentation/personnel-documentation/processing-personnel-actions/gppa09.pdf; *accord Pervez v. Dep't of the Navy*, 193 F.3d 1371, 1374 (Fed. Cir. 1999). The record therefore supports the Department's claim that Hernandez was subject to a probationary period under § 315.801(a)(1).[*]

Nonetheless, Hernandez maintains she was not hired from a competitive list but rather was reinstated; as such, "she was not required to complete a probationary period as a General Engineer because she had previously completed a probationary period when she worked as a Patent Examiner." Although a reinstated employee who completed a probationary period in her prior job is indeed exempt from a second period of probation, 5 C.F.R. § 315.801(a)(2), there is nothing in the record that suggests Hernandez was hired by reinstatement. Had the Department intended to reinstate Hernandez when it first hired her at BIS, it would have coded

---

[*] The record also supports the Department's undisputed contention that Hernandez's prior service at the PTO could not be credited towards her probationary period at the NMTD. Prior federal civilian service may count toward a probationary period only if, among other things, the employee's prior service was "in the same line of work" as her new service, 5 C.F.R. § 315.802(b)(2), and was followed by a "break in service that does not exceed 30 calendar days," *id.* § 315.802(b)(3). Hernandez was hired by the NMTD six months after she left the PTO.

her appointment form as a reinstatement, not as a career appointment from a competitive list. *Compare* OPM Guide tbl. 9-A (codes used for a competitive appointment) *with id.* tbl. 9-C (codes used for reinstatement). Because Hernandez has failed to rebut the Department's legitimate, non-retaliatory reason for changing her status to probationary, the change in status is irrelevant and hence inadmissible as evidence the reason given for her termination was a pretext.

C. Termination of Employment

The Department's stated reason for terminating Hernandez's employment was her "failure to demonstrate acceptable performance during [her] probationary period." We agree with the Department that she has "provided no evidence, other than her subjective opinion," to rebut that reason. The undisputed evidence is that Hernandez made numerous mistakes throughout her tenure at the BIS and that both her colleagues and supervisors expressed concern about her work both at the NMTD and at the CBCD, and both before and after she had lodged her first EEO complaint. In fact, Hernandez conceded at her deposition that she was sometimes confused about her job responsibilities, and that she had particular difficulty with her work at the CBCD.

Hernandez has little to add in her brief. She complains she "was not provided with appropriate training," but offers no evidence that any of her colleagues was provided with training or guidance she was denied. Hernandez also complains she was "never advised ... her performance was unsatisfactory," but even if this is true, it does not discredit the undisputed evidence that her performance was indeed unsatisfactory. On this record, no reasonable jury could find the Department's stated reason for terminating Hernandez's

employment was pretextual and the real reason was retaliation.

## III.  Conclusion

The Department has shown it detailed Hernandez at her request, corrected her record only to reflect the probation she was required by law to serve, and terminated her employment because her performance was not satisfactory.  Because Hernandez has not produced the slightest evidence to show the Department's account is a pretext for retaliation, the judgment of the district court is

*Affirmed.*