# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued November 12, 2014         Decided June 23, 2015

No. 13-7043

ANTHONY S. HARRIS,
APPELLANT

v.

DISTRICT OF COLUMBIA WATER AND SEWER AUTHORITY,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:12-cv-01453)

*John Wesley Davis* argued the cause and filed the briefs for appellant.

*Grace E. Speights* argued the cause for appellee. With her on the brief was *Jocelyn R. Cuttino*.

Before: GARLAND, *Chief Judge*, and TATEL and SRINIVASAN, *Circuit Judges*.

Opinion for the Court filed by *Chief Judge* GARLAND.

GARLAND, *Chief Judge*: Plaintiff Anthony S. Harris worked for the District of Columbia Water and Sewer Authority (WASA) for sixteen years. After losing his job, Harris sued his former employer on a number of grounds, including violating Title VII of the Civil Rights Act of 1964 by retaliating against him for opposing racially discriminatory employment practices. The district court dismissed the case, holding that Harris' complaint failed to sufficiently allege a causal connection between his opposition to WASA's alleged discrimination and his termination. Because the complaint did allege sufficient facts to render Harris' Title VII claim plausible, we reverse.

I

Accepting, as we must, the factual allegations in Harris' complaint as true, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), the facts of this case are relatively straightforward. In September 1995, Harris began work at WASA as a systems operations manager. During his time there, Harris made a number of significant contributions to WASA's maintenance operations, including innovations in administrative processing of work orders, preventative maintenance scheduling, inventory control, and financial planning. As a result, Harris was regularly commended for his work and for his contributions to the improvement of WASA's operations. *See* Compl. ¶¶ 6, 9-10.

Around 2009, Harris and other WASA employees began to notice that WASA was terminating a significant number of black employees and replacing them with white employees. Around the same time, Harris became aware that WASA had hired a number of consultants and contract employees, many of whom were only marginally qualified and several of whom had little or no work to do. In January 2011, Harris wrote a letter to then-Mayor Vincent Gray complaining about problems at WASA, including racial discrimination. In February 2011, he

wrote a similar letter to the committee of the District of Columbia City Council with oversight authority over WASA. In May 2011, WASA officials contacted Harris to arrange a meeting to discuss his January letter. That meeting was canceled and never rescheduled. *See* Compl. ¶¶ 11-14, 17-19.

On October 6, 2011, Harris took a leave of absence from WASA to undergo surgery for chronic kidney failure, which had forced him onto an adjusted work schedule to accommodate his dialysis. On October 11, Harris informed WASA that, per his physician's instructions, he would be unable to return to work until October 26. On October 13, WASA informed Harris that his position had been abolished; it did not, however, provide him with an opportunity to apply for other vacant positions for which he might qualify. Notwithstanding the formal abolition of Harris' position, the functions of that position continued to be performed at WASA. *See* Compl. ¶¶ 20-28.

Harris filed suit against WASA, alleging that he was terminated in retaliation for his January and February letters opposing WASA's racially discriminatory practices, in violation of Title VII and 42 U.S.C. § 1981. Harris also stated a number of claims under D.C. law, including a claim that WASA violated the D.C. Family and Medical Leave Act, which prohibits employers from retaliating against employees for taking medical leave. D.C. CODE §§ 32-503, -507; D.C. MUN. REGS. tit. 4, § 1621.1. In lieu of filing an answer, WASA filed a motion to dismiss Harris' action for "failure to state a claim upon which relief can be granted." FED. R. CIV P. 12(b)(6).

The district court granted the motion. It dismissed Harris' Title VII and § 1981 claims, finding that his complaint failed to sufficiently allege a causal connection between his protected activity (the January and February letters) and his termination, as required to state a retaliation claim. *Harris v. D.C. Water &*

4

*Sewer Auth.*, 922 F. Supp. 2d 30, 34-36 (D.D.C. 2013). With no federal claims remaining in the case, the court declined to exercise supplemental jurisdiction over Harris' D.C. law claims and dismissed those claims as well. *Id.* at 36.

Harris filed a timely notice of appeal. On appeal, he argues that the district court erred in dismissing his Title VII and § 1981 claims because his complaint *did* adequately allege causation. He also argues that, because the district court should not have dismissed his federal claims, his D.C. law claims should be reinstated as well.

II

We review a district court's dismissal of a complaint for failure to state a claim de novo. *Kassem v. Wash. Hosp. Ctr.*, 513 F.3d 251, 253 (D.C. Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

The misconduct alleged here is unlawful retaliation in violation of Title VII, which both prohibits employers from engaging in employment practices that discriminate on the basis of race, *see* 42 U.S.C. § 2000e-2(a), and bars them from retaliating against an employee "because he has opposed any [such] practice," *id.* § 2000e-3(a). *See McGrath v. Clinton*, 666

F.3d 1377, 1379-80 (D.C. Cir. 2012). The complaint also alleged that WASA's unlawful retaliation violated § 1981, which provides that "[a]ll persons . . . shall have the same right . . . to the full and equal benefit of all laws." 42 U.S.C. § 1981. "To prove unlawful retaliation, a plaintiff must show: (1) that he opposed a practice made unlawful by Title VII; (2) that the employer took a materially adverse action against him; and (3) that the employer took the action 'because' the employee opposed the practice." *McGrath*, 666 F.3d at 1380; *see McFadden v. Ballard Spahr Andrews & Ingersoll, LLP*, 611 F.3d 1, 6 (D.C. Cir. 2010) (suggesting that the frameworks applicable to claims of retaliation under Title VII and § 1981 are "essentially the same").

The district court found, and the parties do not dispute, that Harris' complaint alleged sufficient facts on each of the first two elements of a retaliation claim. The only remaining point of contention is whether Harris' complaint alleged sufficient facts going to causation to render his claim plausible. We conclude that it did.

Harris alleged that he complained to his employer about racial discrimination, which is protected activity under Title VII, in January and February of 2011; that his employer knew about this protected activity by May 2011; and that he was fired in October 2011. *See* Compl. ¶¶ 17-19, 26. WASA acknowledges that, under some circumstances, temporal proximity between an employer's knowledge of protected activity and an adverse personnel action may alone be sufficient to raise an inference of causation. It maintains, however, that the five-month gap in this case (from May 2011 to October 2011) was too long to support such an inference.[1]

_____

[1] *Cf. Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (noting that "the temporal proximity must be very close" if the

We need not decide whether a five-month time lag without more would be sufficient to render Harris' claim plausible because his complaint alleged more. In addition to temporal proximity, Harris alleged that he "was regularly commended for his work, and [made] numerous contributions to the improvement of WASA's operations, especially with respect to WASA's facilities and equipment maintenance." Compl. ¶ 10. He also disputed the explanation WASA gave for terminating him -- "that his position at WASA had been abolished," *id.* ¶ 26 -- alleging that the "functions of the position continue[d] to be performed," *id.* ¶ 28, and that he "was given no opportunity by WASA to apply for any vacant positions for which he might qualify," *id.* ¶ 27.

If true, these facts would show that Harris' termination was not attributable to either of the "'two most common legitimate reasons'" for termination: "performance below the employer's legitimate expectations or the elimination of the plaintiff's position altogether." *George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005) (quoting *Stella v. Mineta*, 284 F.3d 135, 145 (D.C. Cir. 2002)). Such a showing is sufficient to satisfy a plaintiff's burden of establishing a prima facie case at the summary judgment stage, *id.*; *cf. Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 358 n.44 (1977) (explaining that eliminating the analogous common reasons for refusing to hire an applicant "is sufficient, absent other explanation, to create an inference that

_____

plaintiff relies on temporal proximity alone); *Hamilton v. Geithner*, 666 F.3d 1344, 1357-58 (D.C. Cir. 2012) (recognizing that, in *Breeden*, the Supreme Court "cited circuit decisions suggesting that in some instances a three-month period between the protected activity and the adverse employment action may, standing alone, be too lengthy to raise an inference of causation," but stating that "neither the Supreme Court nor this court has established a bright-line three-month rule").

the decision was a discriminatory one"), and therefore is certainly enough to survive a motion to dismiss, *cf. Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

But more than that, Harris' complaint alleged facts that, if shown, may be enough to make out not only a prima facie case of retaliation, but also a case sufficient to survive summary judgment outright. At oral argument, WASA's counsel candidly acknowledged that, if Harris' factual allegations were given credence, WASA's proffered justification for terminating Harris "sounds like pretext." Oral Arg. Recording at 23:19-51. It sounds like that to us as well. *See Murray v. Gilmore*, 406 F.3d 708, 714 (D.C. Cir. 2005) (holding that a jury could infer that the elimination of the plaintiff's position was pretextual when the functions of the plaintiff's job were reassigned to a new position that was the "functional[] equivalent" of the plaintiff's). And as this court has repeatedly held, "'[u]sually, proffering evidence from which a jury could find that [the employer's] stated reasons . . . were pretextual . . . will be enough to get a plaintiff's claim to a jury.'" *Calhoun v. Johnson*, 632 F.3d 1259, 1261 (D.C. Cir. 2011) (quoting *George*, 407 F.3d at 413 (internal quotation marks omitted)); *see Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1292 (D.C. Cir. 1998) (en banc).

In short, because Harris' complaint alleged facts that, if shown, would be at least sufficient to state a prime facie case of retaliation -- and perhaps enough to survive summary judgment -- it necessarily alleged facts sufficient to render his claim plausible at the motion to dismiss stage.

At oral argument, WASA advanced another argument, suggesting that Harris had pled himself out of court by alleging facts related to his medical leave. Oral Arg. Recording at 17:55-18:12, 20:30-21:30; *see Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1116 (D.C. Cir. 2003) (explaining that a plaintiff can

plead himself out of court if he "alleg[es] facts that render success on the merits impossible"). According to WASA, Harris' need for medical leave was an intervening act that broke any chain of causation between his protected activity and his termination. Under this theory, it was Harris' medical leave, rather than his opposition to racial discrimination, that was the true cause of his termination.

It is possible, of course, that during discovery WASA will produce evidence showing that the real reason it terminated Harris was that he took medical leave. Such evidence might be enough to rebut Harris' retaliation claim. (Needless to say, it would simultaneously strengthen Harris' D.C. Family and Medical Leave Act claim.[2]) Indeed, it is also possible that discovery will show that the true reason for Harris' termination was what WASA said it was at the time: that his position had been abolished. By the same token, however, discovery may provide Harris with direct evidence of what he alleged in his complaint: that he was terminated in retaliation for complaining about racial discrimination.

But our role is not to speculate about which factual allegations are likely to be proved after discovery. *See Twombly*, 550 U.S. at 556. The only question before us is whether Harris alleged facts that, taken as true, render his claim of retaliation plausible. *See id.* Having alleged a five-month gap between WASA's knowledge of his discrimination complaint and his termination, supplemented by facts that rebut "'the two most common legitimate reasons'" for termination and

---

[2]*See* D.C. CODE §§ 32-503, -507; *see also* D.C. MUN. REGS. tit. 4, § 1621.1 (prohibiting an employer from "us[ing] the fact that an employee has requested . . . or taken a period of family or medical leave under this chapter as a negative factor in employment actions, such as . . . terminations").

also give rise to a reasonable inference of pretext, *George*, 407 F.3d at 412 (quoting *Stella*, 284 F.3d at 145), Harris met that burden.

## III

For the foregoing reasons, we reverse the district court's dismissal of Harris' Title VII and § 1981 claims.  And because the court's dismissal of Harris' District of Columbia law claims was premised on the dismissal of those federal claims, *see Harris*, 922 F. Supp. 2d at 36 (citing 28 U.S.C. § 1367(c)(3)), we reverse that dismissal as well.

*So ordered*.