**Monica A. CHARLES, Appellant**

v.

**DISTRICT OF COLUMBIA DEPART-
MENT OF YOUTH REHABILITA-
TION SERVICES, Appellee**

**No. 16-7036
September Term, 2016**

United States Court of Appeals,
District of Columbia Circuit.

Filed on: May 26, 2017

Johnnie L. Johnson, III, Senior Trial Attorney, Law Office of Johnnie Louis Johnson III LLC, Reston, VA, for Plaintiff-Appellant

Loren L. AliKhan, Deputy Solicitor General, Holly Michelle Johnson, Assistant Attorney General, Todd Sunhwae Kim, Solicitor General, Office of the Attorney General, District of Columbia, Office of the Solicitor General, Washington, DC, for Defendant-Appellee

Before: Garland, Chief Judge, and Rogers and Millett, Circuit Judges.

### JUDGMENT

Per Curiam

This case comes before the court on appeal from the United States District Court for the District of Columbia's order dismissing Appellant Monica Charles' complaint with prejudice. This action was considered on the briefs of the parties. The court has afforded the issues full consideration and has determined that they do not warrant a published opinion. See D.C. CIR. R. 36(d). It is

**ORDERED AND ADJUDGED** that the order of the United States District Court for the District of Columbia be affirmed.

Monica Charles filed suit under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq., and the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq., alleging that her former employer, the District of Columbia Department of Youth Rehabilitation Services, discriminated against her on the basis of her race, age, and national origin. The district court dismissed her suit for failure to exhaust administrative remedies. That decision was correct, and we therefore affirm the district court's dismissal of the complaint.

Monica Charles was employed on a temporary basis as a Program Support Assistant with the District of Columbia Department of Youth Rehabilitation Services. *Charles v. District of Columbia*, 164 F.Supp.3d 98, 99 (D.D.C. 2016). She twice requested a promotion to a permanent position in early 2011. Am. Compl. ¶ 11. Those requests were denied. *Id.* In April 2012, the District issued a recruiting notice for the same permanent position to which Charles had previously applied. *Id.* ¶ 13. Charles applied for the permanent position and was passed over for an allegedly less-qualified, younger person of a different ethnicity. *Id.* ¶¶ 13–14. In August 2012, Charles requested a desk audit to determine if she was performing work above her pay grade. *Id.* ¶ 16. A desk audit in Charles' favor would have entitled her to a pay raise. *Charles*, 164 F.Supp.3d at 99. The requested desk audit was not performed, however. Am. Compl. ¶ 16. In September 2012, Charles received notice that her temporary appointment would not be renewed. *Charles*, 164 F.Supp.3d at 102. Charles' last day of work at the Department of Youth Rehabilitation Services was in October 2012. *Id.*

Charles alleges that those adverse employment actions resulted from intentional discrimination based on her race, age, and national origin. *Charles*, 164 F.Supp.3d at 99. Charles also alleges that she was retaliated against for objecting to those discriminatory employment practices. *Id.*

Charles filed discrimination claims with the Maryland Commission on Civil Rights and the United States Equal Employment Opportunity Commission on August 12, 2013. *See Charles*, 164 F.Supp.3d at 101. Subsequently, Charles received a right-to-sue letter from the Equal Employment Opportunity Commission. *Id.* at 99. She then filed suit against the District of Columbia's Department of Youth Rehabilita-

tion Services in the United States District Court for the District of Columbia. *Id.* The Department moved to dismiss Charles' amended complaint for failure to state a claim or, in the alternative, for summary judgment on the ground that Charles failed to timely exhaust her administrative remedies. *Id.* at 100. The district court granted the motion to dismiss, holding that each of Charles' alleged discriminatory employment practices was a discrete act of discrimination that occurred more than 300 days before she filed her complaint. *Id.* Charles timely appealed to this court.

We review the district court's dismissal of Charles' complaint for failure to state a claim *de novo. See Harris v. District of Columbia Water & Sewer Auth.*, 791 F.3d 65, 68 (D.C. Cir. 2015). In doing so, we accept as true all of the facts plausibly alleged in Charles' complaint and any reasonable inferences to be drawn therefrom. *See id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).

Under both Title VII and the Age Discrimination in Employment Act, Charles could not proceed to district court without first timely exhausting available administrative processes. *See Hernandez v. Pritzker*, 741 F.3d 129, 134 (D.C. Cir. 2013); *see also* 42 U.S.C. § 2000e-16(c). Because Charles filed her discrimination complaint with the Maryland Commission on Civil Rights on August 12, 2013, she could only seek relief for discriminatory actions that occurred within the preceding 300 days— that is, after October 16, 2012. *See* 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(1)(B).

According to Charles' complaint, however, the last discriminatory event was the termination of her temporary position, which occurred in September 2012, well outside the 300-day time limit. Charles' administrative complaint thus was untime-

ly. Charles, moreover, identifies no grounds for which her failure to satisfy that time limit could have been equitably tolled. See *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) ("[F]iling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."). Because Charles did not properly exhaust her claims, she is statutorily barred from filing suit in federal court.

Charles argues that she met the 300-day mark because the different discriminatory acts amounted to a hostile work environment, a type of continuing violation that Charles alleges extended to include additional denials of employment after October 16, 2012. Charles also argues that, even though she was notified of her termination more than 300 days before her filing with the Maryland Commission, her actual last day of employment was after October 16, 2012.

Those arguments are unavailing for multiple reasons. First, Charles made neither of those arguments in district court. Accordingly, they are forfeited. See, e.g., *District of Columbia v. Air Florida, Inc.*, 750 F.2d 1077, 1084 (D.C. Cir. 1984) ("It is well settled that issues and legal theories not asserted at the District Court level ordinarily will not be heard on appeal."). The newly alleged discriminatory refusals to hire her after October 16, 2012, appear nowhere in her complaint, nor did she attempt to amend her complaint in district court to add them even after she was alerted to her timing problem.

Second, the continuing-violation theory would fail in any event. A "continuing violation is 'one that could not reasonably have been expected to be made the subject of a lawsuit when it first occurred because

its character as a violation did not become clear until it was repeated during the limitations period,'" which typically happens when "it is only [the employment action's] cumulative impact (as in the case of a hostile work environment) that reveals its illegality." *Taylor v. FDIC*, 132 F.3d 753, 765 (D.C. Cir. 1997) (quoting *Dasgupta v. University of Wisc. Board of Regents*, 121 F.3d 1138, 1139 (7th Cir. 1997)) (citation omitted). By contrast, Charles' termination and alleged failures to hire are the type of concrete employment actions the impacts of which are immediately felt. Indeed, in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), the Supreme Court held that instances of discriminatory failures to hire are individually actionable violations of federal anti-discrimination laws, each of which is subject to the 300-day time bar. *Id.* at 114–115, 122 S.Ct. 2061. For that reason, a series of hiring denials cannot support a single, ongoing hostile work environment claim. *Id.*; see also *id.* at 114, 122 S.Ct. 2061 ("Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify[,]" and "each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'"); *id.* at 115, 122 S.Ct. 2061 ("Hostile environment claims are different in kind from discrete acts.").

Third, Charles' argument that her last day of work with the District may have been after October 16, 2012, overlooks settled precedent from the Supreme Court and this circuit holding that the prohibited act of discrimination occurs when a decision to terminate is made final, is communicated to the employee, and is no longer subject to reconsideration. And that holds true even if the actual final date of employment occurs later. See, e.g., *Delaware State Coll. v. Ricks*, 449 U.S. 250, 258, 101 S.Ct.

498, 66 L.Ed.2d 431 (1980) ("In sum, the only alleged discrimination occurred—and the filing limitations periods therefore commenced—at the time the tenure decision was made and communicated to [plaintiff]. That is so even though one of the effects of the denial of tenure—the eventual loss of a teaching position—did not occur until later.") (footnote omitted); *Kaufman v. Perez*, 745 F.3d 521, 531 (D.C. Cir. 2014) (Srinivasan, J., concurring) ("The limitations period under federal antidiscrimination and antiretaliation laws starts to run when the challenged action is made and the employee is notified."); *cf. Harris v. Ladner*, 127 F.3d 1121, 1121 (D.C. Cir. 1997) (holding that a decision is not final where the employee is entitled to reconsideration of the allegedly discriminatory act). Charles' complaint does not allege any facts, nor has she presented any argument, suggesting that her termination was not final when it was communicated to her in September 2012, or that she was entitled to any further review of the decision. *See Harris*, 127 F.3d at 1121. Accordingly, even assuming that Charles' last day of work was after October 16, 2012, her effort to exhaust remains untimely.

Because Charles has failed to demonstrate timely exhaustion of her discrimination and retaliation claims, the district court properly dismissed her complaint with prejudice.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing *en banc*. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41(a)(1).